UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY O. SWOPE,                               )
                                                )
                    Plaintiff,                  )
                                                )    Case No.
vs.                                             )
                                                )
FIDUCIARY ASSET MANAGEMENT, L.L.C.,)
                                                )
                    Defendant.                  )

### AFFIDAVIT OF CHARLES D. WALBRANDT

I, Charles D. Walbrandt, duly sworn upon my oath and of lawful age, state as
follows:

1.      My name is Charles D. Walbrandt, and I serve as Chief Executive Officer
and Chief Investment Officer for the defendant, Fiduciary Asset Management, L.L.C.
(the "Company"), in the above-referenced matter. I have served in this capacity for
approximately thirteen years. I have been asked to give this Affidavit in connection with
the foregoing lawsuit of which I have been made aware.

2.      I have been employed by the Company since its inception as its President,
Chairman, and sole owner of its voting shares prior to its conversion to a limited liability
company, and sole holder of its Class A voting membership interests since it became a
limited liability company.

3.      I have developed personal knowledge of the contents of this affidavit
through my employment as President and Chairman for the Company. I am fully
competent to testify to the matters set forth in this affidavit.

4.     The Company is incorporated in the State of Missouri and its principal place of business is in the State of Missouri, specifically at 8112 Maryland Avenue, Suite 400, St. Louis, Missouri 63105.

5.     The Company is a Missouri limited liability company organized under Missouri law and which does business in Missouri. The Company has an Operating Agreement which governs its ownership structure and operations.   The Operating Agreement states that Missouri law applies to it.

6.     The Company provides wealth management services to institutional clients, mutual funds, and to high net worth individuals.

7.     The Company performs nearly all services from its location in St. Louis, Missouri and nearly all of the Company's employees and its primary assets, cash, bank accounts, operations, books, and records are located in St. Louis, Missouri.  All Company executives are located in St. Louis, Missouri and all make their residence in the St. Louis Metropolitan area.  All Company records pertaining to Jeffrey Swope's claims are maintained in St. Louis.

8.     The Company does not, and never has, maintained a branch or satellite office in New York.

9.     The Company is not registered to do business in New York and does not maintain a registered agent in the State of New York.

10.     The Company does not own any property or facilities in New York whether through ownership or lease.   The Company has no bank account in New York and has no assets – either real property, leases, or personal property – in its name in the State of New York.

11.    The Company does not pay any New York property or income taxes.

12.    The Company does not employ, and never has employed, anyone in the State of New York and is not a member of any stock or financial exchange based in New York.

13.    During Jeffrey Swope's employment with the Company, he was never based in and did not operate from New York and the Company did not provide any office or other facility for him there.

14.    While employed by the Company, Mr. Swope did not provide the Company with a New York address as his residence.

15.    Any employees of the Company who would be called to testify in this case are located in the greater metropolitan area of St. Louis, Missouri.

16.    During 2002, the Company hired Jeffrey Swope. The Company met with Swope in St. Louis and primary negotiations with Mr. Swope for his hire occurred during meetings at the Company's St. Louis, Missouri offices. Swope accepted the Company's offer there.

17.    On or about March 29, 2002, the Company transmitted and confirmed its offer of employment to Jeffrey Swope through an offer letter created in St. Louis and that was sent to Mr. Swope in New Orleans, Louisiana. He started work for the Company on April 5, 2002.

18.    While Jeffrey Swope worked for the Company, first as its Senior Vice President, Director of Marketing and Client Relations (from July 2002 through November 2004), and as Managing Director, Business Development and Investor Relations from

November 2004 until his termination of employment on July 3, 2006, he was employed at the Company's St. Louis, Missouri location.

19.    Mr. Swope was provided an executive office in the Company's St. Louis facility and routinely used, and was expected to use, that office.

20.    Mr. Swope traveled outside of Missouri while employed by the Company but his position was based in St. Louis, Missouri. Mr. Swope was told to spend time in its St. Louis office to be a marketing resource and to be available to consult with the Company's senior management, located in St. Louis, concerning the Company's marketing strategy.

21.    When Swope became employed by the Company, he was advised to relocate to St. Louis and the Company provided relocation assistance. For about one year, Mr. Swope relocated to and made his residence in St. Louis, Missouri.

22.    During the first year of his employment, Mr. Swope was generally present in his St. Louis office weekly and for much of each week. Later, he was not in the St. Louis office as often but generally worked from the Company's St. Louis office periodically, i.e., sometimes weekly and sometimes monthly.

23.    Mr. Swope was directed from the Company's St. Louis offices and coordinated his work with persons in that office.

24.    Mr. Swope reported directly to me at the Company's St. Louis, Missouri facility. Mr. Swope routinely met with me in St. Louis to discuss operational, performance, and strategy issues. When in our St. Louis facility, he met with me frequently.

4

25.    Swope routinely met with other Company senior executives at its St. Louis, Missouri facility to discuss operational issues and did so daily when he was in St. Louis.

26.    While employed by the Company, Swope kept a bank account at The Business Bank of St. Louis, located at 8000 Maryland Avenue, Ste. 100, St. Louis (Clayton), Missouri, was paid by the Company in St. Louis, and his paychecks were direct deposited to his account maintained at this bank.

27.    All calculations of Mr. Swope's compensation were made, approved, and issued from the Company's St. Louis, Missouri facility or by St. Louis service providers.

28.    Swope traveled for the Company and incurred airfare, hotel, rental car, subsistence, and other business expenses for which he would request reimbursement by submitting expense reports to the Company in St. Louis.  These were considered for and approved, or not, and paid from St. Louis, Missouri.

29.    The Company terminated Swope's employment in St. Louis, Missouri by issuing Defendant a letter of termination on July 3, 2006.   The Company made its determinations not to pay commissions and compensations alleged to have been owed him at its headquarters in St. Louis, Missouri.

30.    Likewise, the Company made its determination in St. Louis, Missouri that Plaintiff is not entitled to any distribution, sale proceeds, payments, or other compensation by reason of his alleged ownership interest in the Company and reached its conclusion in St. Louis that he had no ownership interest.

I, Charles D. Walbrandt, have read and understood the preceding thirty numbered paragraphs. I confirm their truth and accuracy by my personal knowledge.

*Charles D. Walbrandt*
Charles D. Walbrandt

STATE OF MISSOURI               )
                                )        ss
COUNTY OF ST. LOUIS             )

Subscribed and sworn personally before me on this _20th_ day of July 2007.

*Kathleen M. Becker*
Notary Public

My commission expires: _6-3-11_