**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
                                           :

JEFFREY O. SWOPE,                     :

                                 :

                      Plaintiff,         :     Case No. 07-CV-6921 (BSJ)

                                 :

        vs.                        :

                                 :     (*ECF Case*)

FIDUCIARY ASSET MANAGEMENT, L.L.C.,   :

                                 :

                      Defendant.     :

                                 :
---------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Jonathan L. Hochman (JH 7072)
Matthew A. Katz (MK 4252)
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005

*Of Counsel:*

Stanley G. Schroeder
THE LOWENBAUM PARTNERSHIP, L.L.C.
222 South Central Avenue, Suite 901
Clayton, MO 63105

*Attorneys for Defendant*
*Fiduciary Asset Management, L.L.C.*

{00032996}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................iii-iv

INTRODUCTION ..............................................................................................................1

PROCEDURAL BACKGROUND....................................................................................1

FACTUAL BACKGROUND ............................................................................................2

ARGUMENT .....................................................................................................................5

I.   This is Lawsuit Should Be Dismissed For Lack of Personal
     Jurisdiction Because the Transactions Alleged in the Lawsuit Have
     No Connection with New York and Plaintiff Was Not Injured by
     Tortious Conduct in New York.................................................................................5

     A.  Swope's Causes of Action Do Not Relate to Any Business
         Alleged to be Transacted by FAMCO in New York .....................................7

     B.  Plaintiff Cannot Rely Upon FAMCO's Alleged Tortious
         Conduct o Support Jurisdiction......................................................................9

     C.  Due Process Would be Offended by the Court's Exercise
         of Jurisdiction, Because Minimum Contacts Do Not Exist
         and It Would be Unreasonable to Subject FAMCO to Suit
         in New York.................................................................................................11

         1.  FAMCO Does Not Have Sufficient Minimum Contacts
             with New York .......................................................................................12

         2.  It Would be Unreasonable to Subject FAMCO to this Court's
             Jurisdiction, Because the Witnesses and Documentary
             Evidence for This Case are Located in Missouri .....................................13

II.  Alternatively, This Case Should Be Dismissed in Favor of the First
     Filed Action in the Eastern District of Missouri on Abstention Grounds..............14

     A.  No Special Circumstances Warrant Rejection of the First
         Filed Rule in Favor of Litigation in the Southern District of
         New York.......................................................................................................15

     B.  The Location of Witnesses, Documents, Actions, and Swope's
         Employment Within the Eastern District of Missouri Support Dismissal ......16

C.   Plaintiff's Claims are Compulsory Counterclaims That
Should Have Been Pleaded in the Eastern District Action .............................................20

III. This Case Should Be Dismissed on the Basis of Forum *Non Conveniens* ...........................21

CONCLUSION......................................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Adam v. Jacobs,*
950 F.2d 89 (2d Cir. 1991)............................................................................................ 21

*Allstate Ins. Co. v. Stolarz,*
613 N.E.2d 936 (N.Y. 1993)......................................................................................... 19

*C.E. Jamieson & Co., Ltd. v. Willow Labs, Inc.,*
585 F. Supp. 1410 (S.D.N.Y. 1984).............................................................................. 6

*Chaiken v. VV Publishing Corp.,*
119 F.3d 1018 (2d Cir. 1997).................................................................................. 12, 13

*First City Nat'l Bank and Trust Co. v. Simmons, et al.,*
878 F.2d 76 (2d Cir. 1989)............................................................................................ 14

*Gilbert v. Seton Hall Univ.,*
332 F.3d 105 (2d Cir. 2003).......................................................................................... 18

*J. Lyons & Co., Ltd. v. The Republic of Tea, Inc.,*
892 F. Supp. 486 (S.D.N.Y. 1995).......................................................................... 15, 16

*Mende v. Milestone Tech., Inc.,*
269 F. Supp. 2d 246 (S.D.N.Y. 2003)............................................................................ 9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d. Cir. 1996).............................................................................. 6, 11, 12

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,*
138 F.3d 65 (2d Cir. 1998)............................................................................................ 22

*Snyder v. Ply Gem Inds., Inc.,*
200 F. Supp.2d 246 (S.D.N.Y 2001)........................................................................... 7, 8

*Whitaker v. Am. Telecasting, Inc.,*
261 F.3d 196 (2d Cir. 2001).................................................................................... 10, 11

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.,*
460 F.3d 281 (2d Cir. 2006).......................................................................................... 19

**Statutes**

28 U.S.C. § 1404............................................................................................................ 1

N.Y. C.P.L.R § 302 (2007 online ed.) ................................................................ 6, 7, 10

U.S. Const. amend. XIV, § 1 ................................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(2) ........................................................................................ 1

Fed. R. Civ. P. 12(b)(3) ........................................................................................ 1

Fed. R. Civ. P. 13(a) ......................................................................................... 20, 21

The defendant, Fiduciary Asset Management, L.L.C. (the "Company" or "FAMCO"), by its attorneys, provides this memorandum in support of its Motion to Dismiss the claims of the plaintiff, Jeffrey O. Swope ("Plaintiff" or "Swope"), pursuant to: (i) Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure; and (ii) 28 U.S.C. § 1404.

## INTRODUCTION

This case involves a dispute concerning Plaintiff's employment by FAMCO in Missouri, not New York. Accordingly, this lawsuit does not belong in the New York courts. As discussed below, FAMCO does not transact any business within New York and has not interacted with Swope in New York. The Eastern District of Missouri, moreover, has before it a lawsuit that was filed before this action, on February 12, 2007, between the same parties, and involving disputes arising from the same nucleus of operative facts. Plaintiff's lawsuit is nothing more than a blatant and belated attempt to forum shop. FAMCO, therefore, requests that this Court dismiss this action on three bases: (1) lack of personal jurisdiction over FAMCO; (2) the "first filed" abstention doctrine dictating deference to the Eastern District of Missouri; and (3) the forum *non conveniens* doctrine.

## PROCEDURAL BACKGROUND

On January 2, 2007, Swope, by his attorney and following termination of his employment by the Company, submitted a letter to the Company requesting that it: (a) pay him hundreds of thousands of dollars in commissions he claims the Company owed him, (b) pay him the fair value of Swope's alleged – and nonexistent – ownership interest in the Company, and (c) return to Swope certain  personal property that the Company allegedly had in its possession. Katz Decl. Ex. A at 1-2.[1]

---

[1]  "Katz Decl." herein refers to the Declaration of Matthew A. Katz in Support of Defendant's Motion to Dismiss. Exhibit A to the Katz Declaration is a copy of the letter forwarded to the Company by Mr. Sessions.

On February 12, 2007, the Company filed a declaratory judgment action in the United States District Court, Eastern District of Missouri, Eastern Division (the "Eastern Division Action") to bring a quick resolution to Swope's meritless claims.[2]  Plaintiff received actual notice of this lawsuit through his former attorney, who indicated to Company counsel that he would not accept service of process.  The Company requested a waiver of service, which Plaintiff refused.  Plaintiff then did his best to avoid, evade and dodge personal service, but was eventually served in New York, New York.  *See* Katz Decl. Ex. B.[3]

Despite the pending Missouri action, Swope filed this action in New York Supreme Court for the County of New York ("Plaintiff's Complaint") in a blatant exercise of forum shopping.  FAMCO thereafter removed the action to this Court on August 8, 2007.

As the following facts indicate, all of the potential witnesses in this action are located in St. Louis, Missouri, all of the relevant business records are located in St. Louis, Missouri, and all of the facts upon which this matter rests occurred in Missouri.

## FACTUAL BACKGROUND

FAMCO is a Missouri limited liability company organized under Missouri law and does business in Missouri.  Its principal place of business is located at 8112 Maryland Avenue, Suite 400, St. Louis (Clayton), Missouri 63105.  Walbrandt Aff. ¶ 4.[4]  As a Missouri limited liability company, Plaintiff's ownership structure and operations are governed by an operating agreement, i.e. the "Operating Agreement," which is required and created pursuant to Missouri

---

[2]      *Fiduciary Asset Management, L.L.C. v. Jeffrey O. Swope*, Case No. 4:07-cv-301-HEA, United States District Court, Eastern District of Missouri, Eastern Division.

[3]      Exhibit B to the Katz Declaration is a copy of docket in *Fiduciary Asset Management, L.L.C. v. Jeffrey O. Swope*, Case No. 4:07-cv-301-HEA, United States District Court, Eastern District of Missouri, Eastern Division.

[4]      "Walbrandt Aff." herein refers to the affidavit of Charles D. Walbrandt sworn to on July 26, 2007.

limited liability company law.  *Id*. ¶ 5.  The Operating Agreement is expressly governed by Missouri law.  *Id*. ¶ 5.

The Company provides wealth management services to institutional clients, mutual funds, and to high net worth individuals.  Walbrandt Aff. ¶ 6.  The Company performs all of its services from its location in St. Louis, Missouri, which is the location of the vast majority of the Company's employees and its business records.  *Id*. ¶ 7.  The Company does not, and never has, maintained a branch or satellite office in the State of New York.  *Id*. ¶ 8.

The Company's principal facilities are in St. Louis.  Walbrandt Aff. ¶¶ 4, 7.  Its primary assets, cash, bank accounts and business operations are located in St. Louis, Missouri.  *Id*. ¶ 7.  The Company is not registered to do business in the State of New York, nor does it maintain a registered agent there.  *Id*. ¶ 9.  The Company does not own any property in New York and does not maintain any facilities, whether through ownership or lease, there.  *Id*. ¶ 10.  The Company has no bank account in the State of New York and holds no assets whatsoever there.  *Id*.  The Company does not pay any New York property or income taxes.  *Id*. ¶ 11.  The Company does not employ, and never has employed, anyone in New York and is not a member of any stock or financial exchange based in New York.  *Id*. ¶ 12.

During his employment with the Company, Plaintiff was not established as a New York employee, and did not operate from New York.  Walbrandt Aff. ¶ 13.  While Swope was employed he did not provide the Company with any New York address as his place of residence.  *Id*. ¶ 14.

The Company's executive officers are employed by the Company in St. Louis, Missouri and all make their residence in the St. Louis metropolitan area.  Walbrandt Aff. ¶ 7.  Any Company employee who would be called to testify in this action is located in the greater

metropolitan area of St. Louis, Missouri.  *Id.* ¶ 15.  All documents relevant to Swope's claims are located at the Company's headquarters in St. Louis, Missouri, as are the Company's books and records.  *Id.* ¶ 7.

During 2002, the Company decided to retain Plaintiff's services and met with him in St. Louis.  Walbrandt Aff. ¶ 16.  The negotiations for Swope's hire occurred primarily during meetings in St. Louis, Missouri and he accepted the Company's offer there.  *Id.* ¶ 16.  On or about March 29, 2002, the Company transmitted and confirmed its offer of employment to Plaintiff through an offer letter created in St. Louis and sent to Plaintiff in New Orleans, Louisiana.  *Id.* ¶ 17.

Plaintiff worked for the Company from July 2002 through November 2004 as its Senior Vice President, Director of Marketing and Client Relations.  Subsequently, he became the Managing Director, Business Development and Investor Relations until his termination of employment on July 3, 2006.  Walbrandt Aff. ¶ 18.

Plaintiff was employed at the Company's St. Louis location.  Walbrandt Aff. ¶ 19.  He was provided an executive office at the Company's St. Louis facility and routinely used it.  *Id.* ¶ 19.  Although Plaintiff traveled outside of Missouri while employed by the Company:  (a) he and his position were based in St. Louis, Missouri; (b) he was told to spend time in the Company's St. Louis office to be a marketing resource and to be available to consult with Company management in St. Louis regarding marketing strategy; (c) he was advised to relocate to St. Louis and the Company provided relocation assistance upon his hire; (d) he did relocate and made his residence in St. Louis, Missouri for about one year; (e) he was generally present in his St. Louis office for much of every week during his first year; (f) Swope's physical presence in St. Louis was somewhat reduced after his first year but he generally continued to appear in and

work from St. Louis periodically; and (g) Swope received instructions from and coordinated his services with individuals located in St. Louis, Missouri. *Id.* ¶¶ 20-25.

While employed by the Company, Plaintiff reported directly to Charles D. Walbrandt, who was located in FAMCO's St. Louis, Missouri facility. Walbrandt Aff. ¶ 24. Plaintiff routinely met with him there to discuss business issues. *Id.* This occurred frequently when Plaintiff was in St. Louis, and, while employed by the Company, Plaintiff routinely met with other senior executives at that facility. *Id.*

While employed by the Company: (a) Plaintiff maintained a bank account at The Business Bank of St. Louis, located at 8000 Maryland Avenue, Ste. 100, St. Louis (Clayton), Missouri; (b) Plaintiff was routinely paid by the Company in St. Louis; (c) determinations of, and approvals for, all of Plaintiff's pay and compensation were made at the Company's St. Louis, Missouri facility and/or by FAMCO's agents located in St. Louis County, Missouri; (d) Plaintiff's bi-weekly paychecks were direct deposited to his account maintained at The Business Bank of St. Louis; and (e) Plaintiff incurred business expenses for which he sought reimbursement by submitting expense reports to FAMCO at its St. Louis, Missouri facility and which were considered for approval in St. Louis. Walbrandt Aff. ¶¶ 26-28. FAMCO terminated Plaintiff's employment in St. Louis, Missouri by issuing him a letter of termination on July 3, 2006. *Id.* ¶ 29.

## ARGUMENT

**I.     This Lawsuit Should Be Dismissed For Lack of Personal Jurisdiction Because the Transactions Alleged in the Lawsuit Have No Connection with New York and Plaintiff Was Not Injured by Tortious Conduct in New York**

In a diversity action, the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *See, e.g., C.E. Jamieson & Co., Ltd. v. Willow Labs, Inc.*, 585 F. Supp. 1410,

1410 (S.D.N.Y. 1984). New York law provides for personal jurisdiction over a nonresident defendant via, *inter alia*, New York's long arm statute. N.Y. C.P.L.R § 302 (2007 online ed.). Plaintiff has alleged New York has personal jurisdiction over the Company pursuant to the first and third subsections of the long arm statute. Katz Decl. Ex. C at ¶ 3.[5]

The personal jurisdiction analysis involves two inquiries: (1) whether there is jurisdiction under the state's long arm statute; and (2) whether exercise of jurisdiction pursuant to the state long arm statute is consistent with federal due process requirements. *See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d. Cir. 1996). The New York long arm statute provides, in relevant part, for personal jurisdiction as follows:

(a) Acts which are the basis of jurisdiction. **As to a cause of action arising from any of the acts enumerated in this section**, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1.    Transacts any business within the state or contracts anywhere to supply goods or services in the state; or

* * *

3.    Commits a tortious act without the state causing injury to person or property within the state . . ., if he

(i)    Regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii)    Expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

N.Y. C.P.L.R. § 302(a) (emphasis added) (Plaintiff's Complaint, Katz Decl. Ex. C ¶ 3, alleges only the first and third subsections apply to FAMCO).

---

[5]    Exhibit C to the Katz Declaration is a copy of Plaintiff's Complaint originally filed in New York Supreme Court.

### A.    Swope's Causes of Action Do Not Relate to Any Business Alleged to be Transacted by FAMCO in New York

The statute requires that: (a) the non-domiciliary party to have transacted business in New York; and (b) the cause of action against the non-domiciliary party to have arisen out of that business.  *Snyder v. Ply Gem Inds., Inc.*, 200 F. Supp.2d 246, 249 (S.D.N.Y 2001).  To justify exercise of long arm jurisdiction under N.Y. C.L.P.R. § 302(a)(1), "there must be a strong nexus between the plaintiff's cause of action and the defendant's in state conduct."  *Snyder v. Ply Gem Inds., Inc.*, 200 F. Supp.2d 246, 249 (S.D.N.Y. 2001) (internal quotes omitted).  Here Plaintiff's causes of action do not relate to any of the business he alleges the Company has performed in New York.

Plaintiff alleges six counts against FAMCO, **none of which** bear any relation to FAMCO's allegedly transacting business in New York.  In sum, Plaintiff's claims rest on three bases of jurisdiction: (1) he obtained **non-New York clients** for the Company using contacts he had in New York; (2) he assisted in the potential sale of the Company by placing the Company's CEO in contact with the New York office of the UBS Investment Banking Division; and (3) he obtained a bid from a potential buyer in New York that was turned down by the Company.  Katz Decl. Ex. C ¶¶ 10, 12, and 16.  This activity is not sufficiently related to New York to provide long arm jurisdiction.

In *Snyder v. Ply Gem Industries, Inc.*, the plaintiff was the President and CEO of the defendant, PGI.  200 F. Supp. 2d 246, 248 (S.D.N.Y. 2001).  The terms of his employment agreement provided that he would receive a bonus should he resign with good cause or be terminated without cause.  *Id.*  Two years after the plaintiff began his employment by PGI, the co-defendant, Nortek, purchased PGI and informed the plaintiff that he was terminated.  *Id.*  The sale of PGI to Nortek took place in New York.  *Id.* at 249-50.  Nortek made the bonus payments

required by the contract, but a dispute arose as to the calculation of the bonus payments required and plaintiff sued each defendant in New York. *Id.* at 248. Plaintiff contended that since the sale in New York precipitated his right to bonus payments, his cause of action regarding bonus payments had a sufficient nexus with New York to confer long arm jurisdiction. *Id.* at 249.

The court disagreed. While the change of control precipitated the bonus payments, the plaintiff's cause of action involved interpretation of his contract as to calculation of the commission payments. *Snyder*, 200 F. Supp. 2d at 249. The execution of the contract had occurred two years prior to the sale and the bonus payments had been made for two years after the acquisition. *Id.* The court, moreover, held there was an insufficient nexus with New York, because the plaintiff was residing in Florida when paid the bonus payments and the company paid them from Rhode Island. *Id.*

Here, Plaintiff claims he is owed commissions based on an alleged employment contract that was executed four years before his termination. Katz Decl. Ex. C ¶¶ 7, 17, 19. During Plaintiff's employment, his office, his base of operations, his reporting relationships, his bank account, the payment of his compensation and all determinations of his compensation entitlements were located and performed in St. Louis, Missouri. Even his compensation was paid to Swope's St. Louis, Missouri bank account. Walbrandt Aff. ¶ 26. Further, Plaintiff's own Complaint establishes that compensation he contends is due was earned based on revenue generated from non-New York clients. Katz Decl. Ex. C ¶ 10.

Swope claims the nexus between FAMCO and New York is that he generated business with non-New York clients through contacts he had in New York. Katz Decl. Ex. C ¶ 10. This connection is simply too tenuous to be considered a "strong nexus" between plaintiff's cause of action and FAMCO's alleged in-state conduct. *See, Snyder,* 200 F. Supp. 2d at 249.

Plaintiff's remaining causes of action lack any connection to New York. In Plaintiff's Second Count for "account stated," he alleges he incurred $20,000 of business expenses that were rejected by the Company. Similarly to the alleged commission payments, any reimbursement of those business expenses would involve payments pursuant to Swope's alleged employment agreement entered in St. Louis, Missouri, involve his employment by a St. Louis-based company, involve a payment that in the past had been made to Plaintiff's St. Louis bank account, and would involve decisions and calculations made in St. Louis. Walbrandt Aff. ¶¶ 4, 7, 16-28, 30. Plaintiff's own conduct, moreover, may not be the basis for establishing long arm jurisdiction over FAMCO. *See, Mende v. Milestone Tech.*, *Inc.*, 269 F. Supp. 2d 246, 254 (S.D.N.Y. 2003).

Plaintiff's Third Count for conversion and replevin alleges the Company held his personal property in its St. Louis, Missouri office. Katz Decl. Ex. C ¶¶ 17, 29. Clearly, personal property held in St. Louis, Missouri bears no relation to New York. Plaintiff's final two counts seek an accounting and constructive trust and permission for a corporate accounting. Since the Company is incorporated in Missouri, maintains its principal place of business and corporate headquarters in Missouri, maintains its books and records in Missouri, such relief would not implicate New York. Walbrandt Aff. ¶¶ 4, 7. Based on all of the foregoing, Plaintiff has failed to establish personal jurisdiction of the New York courts over FAMCO under subsection 1 of the long arm statute. Plaintiff also has failed to allege facts sufficient to support long arm jurisdiction under the third subsection of the long arm statute.

### B.  Plaintiff Cannot Rely Upon FAMCO's Alleged Tortious Conduct to Support Jurisdiction

The third subsection of New York's long arm statute provides personal jurisdiction to New York courts over foreign corporations or entities where tortious conduct outside New York

results in injury to a person within New York, if the foreign corporation or entity regularly does or solicits business in New York. N.Y. C.P.L.R. § 302(a)(3). As discussed in the Factual Background section, *supra*, Plaintiff has not pleaded facts to establish that the Company "regularly does or solicits business" in New York. Thus, Plaintiff's claim under CPLR § 302(a)(3)(i) fails. Alternatively, Plaintiff was not injured in New York, defeating long arm jurisdiction.

To determine where a plaintiff is injured, New York courts apply a "situs-of-injury test", seeking the location of the "original event which caused the injury." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal citations omitted). The situs of plaintiff's injury is the location at which the original event causing the injury occurred, not the location of the plaintiff when he or she first felt resultant damages. *Id.* In *Whitaker*, the plaintiff attorney performed legal services in New York for foreign corporations. *Id.* The foreign corporations then withheld payment for his legal services. *Id.* The Court held that the location of the decision not to pay the plaintiff's legal fees was the location of the first injury to plaintiff. *Id.* The court rejected the notion that plaintiff was first injured in New York where he performed the legal services or where he was supposed to receive payment of his fees. *Id.*

Plaintiff's Counts Two, Three, and Four involve allegations of tortious activity by FAMCO. Those three claims involve FAMCO's allegedly not reimbursing Swope for business expenses, not paying commissions he claims to be owed, and FAMCO's allegedly holding personal property belonging to Swope. Katz Decl. Ex. C at 8-9. Swope does not allege how he was first injured in New York, but presumptively he will claim that since he was living in New York as of his termination, he suffered injury in New York. Plaintiff's claims relating to his

personal property, however, involve his injury in St. Louis, Missouri when he was allegedly denied access to that property at FAMCO's St. Louis, Missouri headquarters.  *Id.* ¶ 17.

Plaintiff's remaining claims, for reimbursement of business expenses and commissions after his termination, allege economic injury allegedly occurring in New York, because that is where he claims to have resided as of the date of his termination.  As in *Whitaker*, the original event leading to Plaintiff's alleged injury took place outside of New York.  The Company made its determinations not to pay commissions and compensation alleged to have been owed him from its headquarters in St. Louis, Missouri; made its determination in St. Louis that Plaintiff is not entitled to any distribution, sale proceeds, payments or other compensation by reason of his alleged ownership interest in FAMCO; and concluded in St. Louis that he had no ownership interest in FAMCO.  Walbrandt Aff. ¶¶ 27-30.  New York's long arm statute, therefore, does not confer personal jurisdiction over FAMCO.  As a result, Plaintiff's complaint must be dismissed.

### C.    Due Process Would be Offended by the Court's Exercise of Jurisdiction, Because Minimum Contacts Do Not Exist and It Would be Unreasonable to Subject FAMCO to Suit in New York

Aside from New York's long arm statute, in assessing personal jurisdiction, Plaintiff must also overcome the Due Process Clause of the United States Constitution.  U.S. Const. amend. XIV, § 1; s*ee, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) ("Thus, in resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process.").  The Due Process Clause protects those that do not have meaningful ties with the forum state from binding judgments within that state's jurisdiction.

*Metro. Life Ins. Co.*, 84 F.3d at 567   To satisfy the due process inquiry, FAMCO must have sufficient minimum contacts with the forum state to support exercise of jurisdiction and the exercise of jurisdiction must be reasonable.  *See id.*

### 1.    FAMCO Does Not Have Sufficient Minimum Contacts with New York

Plaintiff's Complaint asserts specific, rather than general, jurisdiction.  Katz Decl. Ex. C ¶ 3.  Specific jurisdiction exists where a Court exercises jurisdiction over a defendant due to the defendant's conduct in the state that is directly related to the cause of action.  *Metro. Life Ins. Co.*, 84 F.3d at 567-68.  To establish specific jurisdiction sufficient to satisfy the Due Process Clause, a plaintiff must establish that the defendant has minimum contact with the forum state and that the plaintiff's claims arise out of those minimum contacts.  *See, e.g., Chaiken v. VV Publishing Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997).

As discussed in sections I(A), *supra*, Plaintiff cannot establish such connection.  Even assuming Plaintiff had made such a showing, it must also be proven that FAMCO "purposely availed" itself of the privilege of transacting business in New York and that it was foreseeable that it would be subject to the New York court's jurisdiction.  *Chaiken*, 119 F.3d at 1028.

Plaintiff's allegations do not satisfy this test either.  The only allegations regarding FAMCO's contacts with New York is Plaintiff's claim that **he** moved to New York, that **he** sought a potential purchaser for FAMCO in New York, and that **he** used his own New York contacts to solicit business for FAMCO with non-New York businesses.  *See* Katz Decl. Ex. C ¶¶ 10, 12, and 16.  Swope does not allege corporate action in New York.  Further, Swope does not allege he was asked to move to New York by the Company or suggest that the Company even desired that he visit New York for such activities.  One can hardly conclude that FAMCO

purposely availed itself of the privilege of transacting business in New York.  Even if this hurdle

can be overcome, it would be unreasonable to subject FAMCO to this Court's jurisdiction.

> **2.    It Would be Unreasonable to Subject FAMCO to this Court's Jurisdiction, Because the Witnesses and Documentary Evidence for This Case are Located in Missouri**

The final step in the due process analysis considers whether assertion of jurisdiction is

consistent "with traditional notions of fair play and substantial justice."  *Chaiken*, 119 F.3d at

1028 (internal citations omitted).  In other words, this Court must analyze whether it is

reasonable for the court to assert jurisdiction.  *Id.*

Courts review five factors in making this determination: "(1) the burden that the exercise

of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating

the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate

judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the

shared interest of the states in furthering substantive social policies."  *Id.* (internal citations

omitted).  As discussed in great detail *supra* and in Section II(B), *infra*, these factors dictate that

this case should proceed in the Eastern District of Missouri.

First, all of the witnesses – except Plaintiff – and the documents which would be in issue

in this case are located in that District.  Second, Missouri law applies to Plaintiff's causes of

action under New York's choice of law rules, *see* Section II(B), *infra*, and cases cited therein,

and the cause of action relates to employment of Swope in Missouri by a Missouri limited

liability corporation.  Further, the State of New York has no interest in litigating a dispute

directly relating to and arising out of (a) the employment of Plaintiff in Missouri, (b) by a

Missouri limited liability company, (c) concerning compensations allegedly owed to Plaintiff, (d)

arising from an alleged Missouri compensation agreement, (e) for alleged performance of non-

New York services for a Missouri company and (f) disputes over ownership and distribution of interests of a Missouri domiciled company. There simply is no contact with New York.

Third, the plaintiff's interest in convenient and effective relief can be satisfied in Missouri through the action presently pending in the Eastern District of Missouri. Fourth, the interstate judicial system's interest in efficiency dictates the first filed action in Missouri proceed. FAMCO was first to file its action which relates precisely to the matters in issue in this case. Such action should be respected as noted below.

Finally, furthering substantive social policies will be done in the place in which the Plaintiff was employed, where FAMCO is incorporated and located, where the witnesses and documents are located, and where the facts underpinning the cause of action actually occurred. These factors lead to the conclusion that this case should be dismissed for lack of personal jurisdiction pursuant to the Due Process Clause.

## II.    Alternatively, This Case Should Be Dismissed in Favor of the First Filed Action in the Eastern District of Missouri on Abstention Grounds

The Second Circuit maintains a well-settled principle that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second." *First City Nat'l Bank and Trust Co. v. Simmons, et al.*, 878 F.2d 76, 79 (2d Cir. 1989) (internal quotation omitted) . This action is the **second** filed and, therefore, should be dismissed for resolution of the parties' claims in the first filed case. Swope filed the instant lawsuit **months after** the Company filed its original action for declaratory judgment in the Eastern District of Missouri.

The "first to file rule" is based on "considerations of judicial administration and conservation of resources." *First City Nat'l Bank and Trust Co.*, 878 F.2d at 80. The first to file rule dictates dismissal of this action in favor of the Eastern District Action, the first filed action.

The balance of convenience lies in Missouri, there are no special circumstances, and the claims asserted in this action, in any event, are compulsory counterclaims to the Eastern District Action's claims.

### A.   No Special Circumstances Warrant Rejection of the First Filed Rule in Favor of Litigation in the Southern District of New York

Special circumstances can be found where a declaratory judgment action is the first filed, it is an attempt to forum shop, and it is in response to a specific notice informing a "defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of suit." *J. Lyons & Co., Ltd. v. The Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995). These circumstances are not present in this case and it is Swope, and not the Company, that is attempting to shop for a convenient forum.

Swope's letter indicates that Swope "would prefer to avoid the necessity of filing a lawsuit." Katz Dec. Ex. A. It also indicated that **if** the Company did not take certain steps, "we will **recommend** that Mr. Swope initiate a lawsuit naming [the Company] and all responsible parties as defendants." *Id.*. Finally, Swope's letter indicated that should a lawsuit be necessary, it would be filed in **Austin, Texas**. *Id.* Swope, however, was employed in St. Louis, Missouri, not Texas or New York. His filing his lawsuit in New York reveals his interest in shopping for a forum convenient to him rather than the Company. The Company simply filed suit where all of the relevant facts occurred, the witnesses and records are located, and where Swope was employed, based, and resided when all of the relevant facts occurred which gave rise to this action.

Special circumstances are not present here because Swope's letter did not inform the Company that he intended on filing suit. Instead, Swope indicated he would **like to avoid** litigation and that if the Company did not comply with his demands, his attorneys would

**recommend** he file a lawsuit.  The letter, moreover, simply asks for a prompt response.  It **does**

**not** indicate a deadline by which litigation would be filed.  *See, J. Lyons & Co., Ltd.*, 892 F.

Supp. at 491 ("Although [the plaintiff] mentioned the possibility of legal actions, it did not

specify any date or forum.").  Finally, special circumstances do not exist, because Swope chose

New York, rather than Austin, Texas as the forum in which he filed suit.  Importantly, Swope

then waited until June 29, 2007, to file his New York action, **six months after his letter**.

Thus, Swope clearly was not anticipating imminent action.  Although he was

contemplating an action and raised sufficient concerns in the Company which justified filing its

action imminently and which concerns have been borne out.

### B.   The Location of Witnesses, Documents, Actions, and Swope's Employment Within the Eastern District of Missouri Support Dismissal

Courts also analyze the balance of convenience in considering whether to reject the first

filed rule.  Factors considered include:

> (1) the convenience of witnesses; (2) the location of relevant documents; (3) the
> convenience of the parties; (4) the locus of the operative facts; (5) the availability
> of process to compel attendance of unwilling witnesses; (6) the relative means of
> the parties; (7) a forum's familiarity with governing law; (8) the weight afforded a
> plaintiff's choice of forum; and (9) trial efficiency and the interests of justice,
> based on the totality of the circumstances.

*J. Lyons & Co., Ltd.*, 892 F. Supp. at 492.

First, the "Facts" portion of Plaintiff's Original Complaint specifically identifies Charles

Walbrandt and Joe Gallagher as potential witnesses.  Katz Decl. Ex. C ¶ 13, 15.  Both are

employed and reside in Metropolitan St. Louis, Missouri.  Walbrandt Aff. ¶ 7.  The Company's

headquarters, moreover, are located in St. Louis, Missouri.  *Id*.  Any other employees, therefore,

would most conveniently be deposed in St. Louis, Missouri.  Swope, exclusively, would find

New York a convenient forum.

Second, as to the location of relevant documents, the Company maintains its documents at its headquarters and all of its books and records in St. Louis, Missouri. Walbrandt Aff. ¶ 7. Swope's lawsuit, furthermore, involves claims that the Company retains his personal property at its St. Louis, Missouri headquarters. The balance of the evidence, therefore, is in Missouri, not New York.

Third, we examine the convenience of the parties. Swope clearly believes New York is the most convenient forum for him. However, the primary witnesses suggested by Swope, i.e., Messrs. Walbrandt and Gallagher, are all located in Missouri. Any other employee-witnesses are also located in the Company's corporate headquarters which is located in Missouri. Further, since the Company's books and records are bound to be at issue in this case, and they are present in Missouri, they would be most conveniently accessed and produced in Missouri. In fact, Missouri is more convenient for all purposes and for all people except Swope.

Fourth, the operative facts occurred in Missouri. In this case, the only reason a New York action was filed was because Swope "decided to officially move to New York City." Katz Decl. Ex. C ¶ 16. Swope made his office in St. Louis, Missouri, where he was expected to and did spend much of his time and met with his superiors and peers. Walbrandt Aff. ¶ 20, 22-25. Swope entered into his employment arrangement in Missouri. *Id.* ¶ 16. Swope was employed and supervised in Missouri. *Id.* ¶ 19-25. Swope's base of operations was in St. Louis. *Id.* ¶ 19. Swope consulted with and interfaced with superiors and peers in Missouri. *Id.* ¶ 19-25. The basis for the compensation Swope seeks was in Missouri. *Id.* ¶ 27. Swope was paid in Missouri through a Missouri bank at which he maintained his accounts. *Id.* ¶ 26. The Company conducted its operations in Missouri. *Id.* ¶ 4-5. Any entitlement to compensation was determined and paid in Missouri. *Id.* ¶ 27. The property Swope alleges was improperly withheld

and which he seeks to have returned to him resides in Missouri.  Section I, *supra*, and Walbrandt Aff. ¶¶ 7, 19, 22-23.

Further, Plaintiff seeks an accounting of a Missouri limited liability corporation, to place a constructive trust on funds that may be disbursed in Missouri, and an inspection of corporate books and records that are located in Missouri.  Walbrandt Aff. ¶¶ 4-5, 7; Katz Decl. Ex. C at 9-10.  Thus, an analysis of the operative facts reveals Missouri as the most appropriate forum.

The fifth factor reviews the availability of process to compel the attendance of unwilling witnesses.  Federal Rule of Civil Procedure 45 permits service of a subpoena to compel the attendance of witnesses within the district from which the subpoena issued or within 100 miles of the district.  Plaintiff has failed to indicate any potential witness located outside the State of Missouri.  Witnesses, therefore, may not be able to be compelled to attend a trial in New York.  Moreover, as indicated above, FAMCO, its employees and the principal operatives identified in Swope's Complaint – Walbrandt and Gallagher – are within the subpoena power of the Eastern District of Missouri since that courthouse is located in St. Louis.

Sixth, the relative means of the parties do not suggest a New York forum would be appropriate.  As Swope indicated, he received "substantial commission checks" and "was making nearly a million dollars in commissions."  Katz Decl. Ex. C ¶ 11.  This does not suggest that Swope lacks resources to conduct litigation in Missouri.  Thus, the relative means of the parties does not suggest burdening the Company with a New York forum in order to accommodate Swope.

The seventh factor is the forum's familiarity with the governing law.  In federal court actions based on the court's diversity jurisdiction, the federal court applies the choice of law rules of the forum state.  *See, e.g., Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003).

In contract cases, New York courts apply the "grouping of contacts analysis, which considers the following factors: (a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the domicile of the subject matter of the contract; and (e) the domicile of the contracting parties." *See, Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936, 940 (N.Y. 1993).

In the instant case, the terms of Swope's alleged employment contract were negotiated by the Company in Missouri, accepted in a meeting in Missouri, and confirmed by a letter authored in Missouri. Walbrandt Aff. ¶¶ 16-17. As the foregoing shows, Swope was expected to work in Missouri, had his base of operations and office in Missouri, was supervised from Missouri, was to have relocated and did relocate to Missouri, and his compensation and the decisions to deny his demands for compensation, were determined, paid and made in Missouri. At all times the Company has been domiciled in Missouri and conducted its operations in Missouri. Missouri contract law, therefore, governs.

Similarly, Plaintiff's tort claims involve allegedly tortious acts in Missouri, e.g. the alleged improper retention of property and denial of compensation or ownership entitlements, conversion, etc. Under New York choice of law provisions for tortious acts, the law of the state with "the most significant interest in, or relationship to, the dispute" applies. *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (internal quotations omitted). In *White Plains*, the tort was substantially committed in New York and the plaintiffs were injured in New York. *Id.* The court, therefore, applied New York law. Here, the torts alleged by Swope indisputably occurred in Missouri. Katz Decl. Ex. C ¶ 18-20. As discussed at section I(B), *supra*, Swope's injuries also occurred in Missouri. The Eastern District Action will, therefore, provide the best forum with respect to knowledge of applicable law.

The eighth factor, the weight afforded a plaintiff's choice of forum, does not dictate a New York forum. Here, Swope initially indicated he was considering Austin, Texas as the potential forum. Then, apparently, Swope moved to New York and decided that is where he wanted to file suit. Swope's residing in New York is mere happenstance that does not provide any weight to Swope's choice of a New York forum. Essentially, Swope seems to be amenable to any forum, other than Missouri, to make this litigation more expensive and inconvenient for the Company.

Finally, the balance of convenience considers the trial efficiency and the interests of justice, based on the totality of the circumstances. As all of the foregoing has demonstrated, this trial would most efficiently be held in Missouri. The Missouri District Court can issue subpoenas for all of the witnesses that have been identified to date. Conversely, Swope is the exclusive witness residing in New York. Moreover, all of the documentary evidence is located in Missouri. Finally, Missouri is the only state that is truly interested in this cause of action involving a Missouri limited liability corporation's employment of (a) an individual employed in Missouri, (b) who lived in Missouri for a majority of his employment, and (c) who claims interests in a Missouri limited liability company. The balance of convenience, thus, clearly indicates Missouri as the appropriate forum.

### C.    Plaintiff's Claims are Compulsory Counterclaims That Should Have Been Pleaded in the Eastern District Action

Pursuant to Federal Rule of Civil Procedure 13(a), a party must state in a responsive pleading any claim the party has against the opposing party that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." In the instant case, the Eastern District Action, which was filed first by the Company, seeks a determination, among other things, that the Company does not owe Swope any additional sums from his employment

by the Company and that Swope does not have any ownership interest in the Company. Swope's action in this Court seeks compensation he claims is due to him pursuant to his employment by the Company, money he claims is due to him as a result of his alleged ownership interest in the Company, to recover personal property he claims he left in his office, and various equitable relief associated with his claim of ownership in the Company. All of these claims arise out of his employment relationship with the Company, the subject matter of the Eastern District Action, and are therefore compulsory counterclaims. *See Adam v. Jacobs*, 950 F.2d 89, 92-93 (2d Cir. 1991) ("Under Fed. R. Civ. P. 13(a), a pleading must state as a counterclaim any claim that arises out of the 'transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.'").

While filing a separate action, rather than counterclaims, is not a technical violation of Rule 13, it does contravene the purpose of Rule 13:

> Rule 13(a) 'was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.' The rule 'was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint'. We believe that the rule plays a unique role in conserving judicial resources and that a court's failure to stay its hand unduly burdens the litigation process.

*Adam*, 950 F.2d at 93 (citing *Southern Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962)).

Transfer to Missouri or dismissal of this case is warranted on these grounds. *Id.* at 94.

## III.    This Case Should Be Dismissed on the Basis of Forum *Non Conveniens*

Should this Court determine that this case should not be dismissed for want of personal jurisdiction or on the basis of the "first filed" rule, it should be dismissed in favor of the Eastern District Action on the basis of forum *non conveniens* pursuant to 28 U.S.C. § 1404 and Rule

12(b)(3).  Forum *non conveniens* permits a court to dismiss an action that is before it even though the court is a permissible venue with proper jurisdiction.  *See, e.g., PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998).  Through this discretionary inquiry, a court decides which forum would be most convenient and will serve the interests of justice.  *Id.* The doctrine involves a two step inquiry.  First, there must be an adequate alternate forum.  In this case, the Eastern District Action involving the same parties and the same principal claims is already pending, therefore, the second step must be considered.  The second step in the inquiry balances the private interests of the parties and the public interest in the forum's selection.  *Id.*  The private interests involve consideration of "access to sources of proof, costs of obtaining willing witnesses, availability for compulsory process for unwilling witnesses, and other practical concerns."  *Id.*

As discussed at length in section II(B), *supra*, these factors weigh heavily in favor of a Missouri forum.  Swope's employment was in Missouri, all sources of proof, and the principal documents and witnesses are all in Missouri.  Walbrandt Aff. ¶¶ 7, 15, 16-30.  Any unwilling witnesses are likely to be located in Missouri.  Swope's filing this lawsuit in New York is nothing more than a desperate attempt to avoid the Eastern District Action because it is convenient to the Company.

The public interest in the forum also reveals Missouri as the most interested forum.  Considerations in weighing the public interest involve: court congestion, interest of forums in deciding local disputes, and interest in issues of foreign law being decided by foreign tribunals.  As discussed, *supra*, this case will be decided based on Missouri law, involves Missouri employment, concerns a Missouri limited liability company performing its principal functions in Missouri with Missouri-based talent and Missouri assets whose headquarters and principal place

of business is in Missouri, and seeks an equitable accounting and allocation of ownership interests of a Missouri limited liability company.

This is a dispute local to Missouri. The only nexus it has with New York is that Swope recently moved to New York. This is not a case of a long-time New York resident being hired to work in New York for a Missouri limited liability corporation. No serious allegations have been made that FAMCO has any ties whatsoever with New York or that it even does business in New York. Swope's moving to New York did not benefit the Company in any way. The Company's preference was that Swope would spend a majority of his employment in the St. Louis, Missouri office it provided to him. Walbrandt Aff. ¶¶ 21-25. Swope moved to New York after years of employment on his own initiative.

Finally, court congestion suggests the Missouri forum would be the most appropriate. As reported on the 2006 Annual Report of the Director: Judicial Business of the United States Courts, judges in the Southern District of New York are assigned a weighted total of 501 cases, while judges of the Eastern District of Missouri are assigned a weighted total of 461 cases. The Federal Judiciary, http://www.uscourts.gov/judbus2006/contents.html, at Table X-1A. Thus, all of the factors reveal the Eastern District of Missouri as the most logical and convenient forum for this action.

## CONCLUSION

For the foregoing reasons, Defendant Fiduciary Asset Management, L.L.C.'s motion to dismiss the claims asserted by Plaintiff Jeffrey O. Swope should be granted with prejudice.

Dated: New York, New York
   August 8, 2007

        SCHINDLER COHEN & HOCHMAN, LLP

          s/ Jonathan L. Hochman
          Jonathan L. Hochman
          Matthew A. Katz

        100 Wall Street
        15th Floor
        New York, New York  10005
        (212) 277-6330
        (212) 277-6333 (facsimile)

        **OF COUNSEL:**

        Stanley G. Schroeder
        The Lowenbaum Partnership, L.L.C.
        222 South Central Avenue, Suite 901
        Clayton, MO 63105
        (314) 863-0092
        (314) 746-4848 (facsimile)

        *Attorneys for Defendant*
        *Fiduciary Asset Management, L.L.C.*