UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JEFFREY O. SWOPE,                                   :     **AFFIDAVIT OF**

               Plaintiff,                                :     **JEFFREY O. SWOPE**

      -against-                                       :

                                 :

FIDUCIARY ASSET MANAGEMENT, LLC,        :     Case No. 07-CV-6921 (BSJ)

            Defendant.                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JEFFREY O. SWOPE,** being duly sworn, deposes and says:

1. My name is Jeffrey O. Swope and I am the Plaintiff in the above-captioned matter. I have personal knowledge of the contents of this affidavit and I am fully competent to testify to the matters set forth herein.

2. I first learned of employment opportunities with Defendant Fiduciary Asset Management, LLC ("FAMCO") from Michael Martinolich of Cromwell Partners, an employment recruiter located in New York City who recruited me for employment with FAMCO. As part of the recruitment process, Mr. Martinolich assisted with the negotiation of the terms and conditions for my employment, including the commission payments that I was to receive. When FAMCO communicated its employment offer, it did so in a writing setting forth the terms and conditions of employment, including with respect to the payment of commissions, and copied Mr. Martinolich on the correspondence.

3. My position with FAMCO largely involved marketing to and developing relationships for FAMCO with major institutional investors that could benefit from FAMCO's asset

management products. Many of these institutional investors were headquartered in or did business in the New York City region.

4. The majority of my compensation from FAMCO came from commissions paid for generating business with these non-Missouri entities, and as a result, I was not required to live or work in Missouri. Rather, I lived in New Orleans for the first part of my employment, and I eventually relocated to New York City, New York, where I lived and worked for FAMCO during the last eight months of my employment. I regularly conducted business on behalf of FAMCO in New York, both before and after moving there, and I regularly earned commissions that were based on business that I brought in from New York.

5. Throughout the course of my employment, I developed a great deal of business relationships on behalf of FAMCO with a number of companies based in or actively doing business in New York, including Avon Products, Inc., Colgate-Palmolive Company, Consolidated Edison Company of New York, Inc., Deutsche Bank North America Holding Corporation, Fiat North America, Ford Foundation, General Motors Asset Management, Goldman, Sachs & Co., Guardian Life Insurance of America, ITT Industries, Inc., JP Morgan Chase & Co., KeySpan Corporation, L.I.C.R. Fund, Inc., Loews Corporation, Memorial Sloan-Kettering Cancer Center, New York Life Insurance Co., New York Times Company, New York University, Novartis Corporation, Pentegra Retirement Services, PepsiCo, Inc., Pfizer, Inc., Philips Electronics North America Corporation, Reed Elseveir, Inc., Siemens Corp., The Church Pension Fund & Affiliates (Episcopal), The Metropolitan Museum of Art, The Rockefeller University, The Wallace Foundation, Time Warner, Inc., United Church of Christ Pension Boards, and YMCA

Retirement Fund. A true and correct copy of a log of these business contacts is attached hereto as Exhibit A.

6. In November 2005, a few months after being awarded an 8% equity stake in FAMCO—an award that was confirmed in writing by FAMCO's Chief Executive Officer, Charles Walbrandt, I moved to and become a resident of New York, both to continue my active marketing efforts on behalf of FAMCO in New York, and because many of my additional employment responsibilities at that time related to the potential sale of FAMCO, which in turn involved significant activities in New York. My address during this time was 10 Liberty Street, Unit 44E, New York, NY 10005.

7. I understand from my counsel that FAMCO denies in this action that it was ever informed that I moved to New York. This is categorically false. FAMCO knew of and approved of my relocation to New York, and was aware that I was performing services on its behalf in New York. In fact, I met with other FAMCO employees and officers in New York on many occasions. In addition, FAMCO regularly sent Federal Express packages to my home, and frequently contacted me on my home phone number. In this regard, after being terminated by FAMCO, I contacted the company because I had not received any information on COBRA benefits, and on September 15, 2006, FAMCO wrote to me and stated that "Upon your separation Fiduciary Asset Management had an address of: 10 Liberty Street, Unit 44E, New York, NY 10005. Your COBRA benefits continuation packet was mailed to this address." A true and correct copy of this correspondence is attached hereto as Exhibit B.

8. To illustrate just a fraction of the business that I transacted on behalf of FAMCO in New York throughout the course of my employment, the following is a partial list of business

activity I engaged in on behalf of FAMCO from the end of 2005 until my termination in June 2006. True and correct copies of my meeting logs for this period are attached hereto as Exhibit C. To summarize:

a. On November 17, 2005, I met with William Cobb of Affiliates (Episcopal) in New York.

b. On November 17, 2005, I met with David Landau of YMCA Retirement Fund in New York.

c. On November 18, 2005, I met with Joseph Kulhanek of Avon Products, Inc. in New York.

d. On November 18, 2005, I met with Abashiek Metha of Rockefeller Brothers Fund in New York.

e. On November 18, 2005 and November 29, 2005, I met with Timothy Kiernan of KeySpan Corporation in New York.

f. On November 18, 2005, I met with Lisa Danzig of the Rockefeller University in New York.

g. On November 29, 2005, I met with Maurice Maertens of New York University in New York.

h. On December 1, 2005, I met with Kathy Scudda of Morgan Stanley in New York.

i. On December 1, 2005, I met with Tom Donovon of CSFB in New York.

j. On December 3, 2005, I met with Helen Fox-O'Brien of Affiliates (Episcopal) in New York.

k.  On December 7, 2005, I met with David Moroch of Novartis Corporation in New York.

l.  On December 7, 2005, I met with Rob Nagel of the Wallace Foundation in New York.

m.  On December 7, 2005, I met with Clayton Young of ITT Industries, Inc. in White Plains, New York.

n.  On December 12, 2005, I met with Graham Arader of Arader Galleries in New York.

o.  On January 14, 2006, I met with Gregory Fowlkes of Alternate Investment Group in New York.

p.  On April 4, 2006, I spoke with Mike Casel of Overture, located in New York.

q.  On April 5, 2006, I met with Ford Graham of Vulcan Capital in New York.

r.  On April 6, 2006, I spoke with Don Segalas of Pinnacle Asset Management, in New York.

s.  On April 6, 2006, I met with David Saatchi, a retired investor, in New York.

t.  On April 7, 2006, I met with Ricky White of Barnard College in New York.

u.  On April 7, 2006, I spoke with Tom Leeds of Morgan Stanley in New York.

v.  On April 18, 2006, I spoke with Manit Rye of Merrill Lynch in New York.

w.  On May 1, 2007, I spoke with Brian Wood and Rick Gould of Morgan Stanley in New York.

x.  On May 2, 2006, I spoke with Craig Heatter of JP Morgan Chase in New York.

y.  On May 3, 2006, I emailed Manit Rye of Merrill Lynch in New York.

z.      On May 3, 2006, I spoke with Yusuf Randera-Rees of Credit Suisse in New York.

aa.     On May 3, 2006, I spoke with Brendan Wallace and Christof Phiffer of Goldman Sachs in New York.

bb.     On May 4, 2006, I spoke with Barbara Blakely of Stevenson Partners Housing in New York.

cc.     On May 8, 2006, I spoke with Brian Wood of Morgan Stanley in New York.

dd.     On May 8, 2006, I spoke again with Craig Heatter of JP Morgan Chase in New York.

ee.     On May 11, 12, and 16, 2007, I emailed Sam Patel of Bank of America in New York.

ff.     On May 12, 2006, I spoke with Mark Sutton of UBS in New York.

gg.     On May 17, 2006, I met with Al Fernandez of Teamsters, Local #807, in New York.

hh.     On May 18, 2006, I met with Shelby Scott of AFTRA Health and Retirement Funds in New York.

ii.     On May 18, 2006, I met with Howard Smith of the Starr Foundation in New York.

jj.     On May 18, 2006, I met with Mark Sutton of UBS in New York.

kk.     On May 19, 2006, I met with Steven Schiffman of Mac Andrews & Forbes Holdings in New York.

ll.     On May 19, 2006, I spoke with Karen Byers of Markle Foundation in New York.

mm.   On May 24, 2006, I spoke with Mark Sutton of UBS in New York.

nn.   On May 24, 2006, I spoke with Sam Patel of Bank of America in New York.

oo.   On May 25, 2006, I met with Bill Williams of Merrill Lynch in New York.

pp.   On May 25, 2006, I met with Jenny Jung of Bank of America in New York.

qq.   On June 5, 2006, I spoke with and emailed Jenny Jung of Bank of America in New York.

rr.   On June 6, 2006, I emailed Brain Wood of Morgan Stanley in New York.

ss.   On June 8, 2006, I spoke with Brian Williams of Merrill Lynch in New York.

tt.   On June 8, 2006, I spoke with Yusuf Randera-Rees of Credit Suisse in New York.

9. In addition to these marketing activities on behalf of FAMCO, starting in 2005, I also became very active assisting FAMCO with exploring a sale of the company. Many of these activities took place in New York. For example, in the first quarter of 2005, I met with Steve Neamitz, president of AIG SunAmerica in New York to discuss products FAMCO offered that might be appropriate for AIG. One of FAMCO's salespeople, Bob Hennessey also attended the meeting with me that day. In addition, once FAMCO's Chief Executive Officer Charles Walbrandt decided to explore a sale of the company, I introduced to Mr. Walbrandt to Mr. Neamitz, and they had 2 or 3 serious meetings regarding AIG buying FAMCO. These discussions quickly progressed to the board level but were apparently halted after AIG's Chairman, Hank Greenberg, resigned amidst a Securities Exchange Commission investigation.

10. In addition, at about the same time that FAMCO was talking to AIG, I introduced FAMCO to UBS. Specifically, I called Kent Penwell, of UBS financial services in San

Francisco, to discuss their interest in representing FAMCO in a sale. Mr. Penwell then introduced me to Brad Hearsh, head of financial services investment banking for UBS in New York. After speaking with Mr. Hearsh, I introduced him to Mr. Walbrandt. UBS and FAMCO subsequently entered into an agreement for UBS to represent the company, and thereafter, UBS conducted its due diligence of the firm, built a "selling book" containing key information about FAMCO, including its financial performance, senior management, and ownership, and then distributed it to many potential buyers within New York and around the world.

11. Two of the most interested parties in acquiring FAMCO were New York Life and Lehman Brothers' money management unit, Neuberger Berman. I personally attended high-level meetings with both of these firms. I, as an equity holder and key executive of FAMCO, was actively involved in the meetings and spent a great deal of time talking about the market's response to individual FAMCO products. As the diligence process progressed to the point of setting up a "data room" for these firms to conduct detailed financial diligence in late January 2006, I was working with people from New York Life, discussing our products and how they might be positioned in their product line up.

12. Specifically, I first met in New York with Tony Elavia, the Chief Investment Officer of New York Life Investment Management, LLC. A few weeks later, I was invited by the CEO of New York Life Investment Management, Brian Murdock, to have lunch with him and discuss my thoughts and concerns about a possible transaction between the two firms and my role in a combined entity. Ultimately, New York Life made a substantial offer to acquire FAMCO, however, Mr. Walbrandt turned the offer down sometime in the second quarter of 2006.

13. Thereafter, I continued to pursue sale opportunities on behalf of FAMCO, until, in June of 2006, FAMCO terminated me without cause or warning. Thereafter, FAMCO apparently continued negotiating for a sale of the company and eight months later entered into a definitive sale agreement to be acquired by the firm Piper Jaffray, which actively does business in and I understand maintains two offices in New York.

_____
Jeffrey O. Swope

Sworn to me this _23rd_
Day of August, 2007.

_____
Notary Public

NALINI SANKAR
Notary Public, State of New York
No. 01SA6032652
Qualified in Queens County
Commission Expires 11-08-2009