**CORRECTED COPY**
(cover page correction)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
JEFFREY O. SWOPE,                                    :

        Plaintiff,                          :

    -against-                                      :     Case No. 07-CV-6921 (BSJ)

                             :

FIDUCIARY ASSET MANAGEMENT, LLC,                     :

        Defendant.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

August 23, 2007

Todd A. Higgins (TH 7920)
Crosby & Higgins LLP
500 Fifth Avenue, Suite 1410
New York, NY 10110
Ph: (646) 452-2300
Fax: (646) 452-2301
Attorneys for Plaintiff

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Preliminary Statement .......................................................................................... 1

Factual Background .............................................................................................. 3

Procedural History ............................................................................................... 8

Argument .............................................................................................................. 10

I.   PERSONAL JURISDICTION OVER FAMCO IN NEW YORK IS PROPER SINCE THE TRANSACTIONS ALLEGED IN THE LAWSUIT ARE DIRECTLY CONNECTED TO NEW YORK, PLAINTIFF'S INJURY OCCURRED IN NEW YORK DUE TO TORTIOUS CONDUCT BY DEFENDANT OUTSIDE THE STATE, AND DUE PROCESS IS NOT OFFENDED BY THE EXERCISE OF JURISDICTION OVER DEFENDANT ..................................................... 10

   A.  Personal jurisdiction over Defendant is proper because Plaintiff's complaint alleges causes of action relating to business transacted by Defendant within New York ........................................................... 10

   B.  Personal jurisdiction over Defendant is also proper because Plaintiff's injury occurred within New York due to tortious conduct committed by Defendant outside of the state ...................................................... 12

   C.  Minimum contacts with New York satisfy Due Process .................... 14

   D.  Traditional notions of fair play and substantial justice satisfy due process ...................................................................................................... 15

II.  THE "FIRST-FILED RULE" IS INAPPLICABLE SINCE FAMCO'S FILING IN MISSOURI WAS A "RACE TO THE COURTHOUSE" .................... 16

III. PLAINTIFF'S CLAIMS ARE NOT COMPULSORY COUNTERCLAIMS THAT SHOULD HAVE BEEN RAISED IN THE MISSOURI ACTION .............................................................................................. 18

IV.  THE DOCTRINE OF FORUM NON CONVENIENS IS NOT APPLICABLE .......................................................................................................... 19

CONCLUSION ..................................................................................................... 21

i

## TABLE OF AUTHORITIES

**Supreme Court Cases**

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985) ................................... 14

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501, 67 S.Ct. 839 (1947) ....................................................... 20

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310, 66 S.Ct. 154 (1945) ....................................................... 14

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235, 250, 102 S.Ct. 252 (1981) ....................................... 19, 20

*World Wide Volkswagen v. Woodson,*
    444 U.S. 286, 105 S.Ct. 2174 (1980) ............................................. 14, 15


**United States Court of Appeals Cases**

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779, 791 (2d Cir. 1999) ....................................................... 12

*DiStefano v. Carozzi North Am., Inc.,*
    286 F.3d 81 (2d Cir. 2001) .......................................................... 12, 13

*Hahn v. Vermont Law Sch.,*
    698 F.2d 48 (1st Cir. 1983) ................................................................ 11

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,*
    138 F.3d 65, 73 (2d Cir. 1998) ........................................................... 19


**United States District Court Cases**

*Commercial Union Ins. Co. v. Torbaty,*
    955 F. Supp. 1162 (E.D. Mo. 1997) ................................................... 17

*Creative Compounds, LLC v. Sabinsa Corp.,*
    No. 1:04CV114CDP, 2004 WL 2601203 (E.D. Mo. Nov. 9, 2004) .............. 16, 17

*Employers Reinsurance Corp. v. MSK Ins., Ltd.,*
    No. Civ.A.01-2608-CM, 2003 WL 21143105 (D.Kan. March 31, 2003) ............. 17

*Franklin v. Diamond Offshore Mgmt. Co.,*
    No. 93-3940, 1994 WL 144288 (E.D.La. April 18, 1994) .................................... 19

*In re Bayou Hedge Fund Inv. Litig.,*
    472 F.Supp.2d 534, 540 (S.D.N.Y. 2007)................................................................ 15

*J. Lyons & Co., Ltd. v. The Republic of Tea, Inc.,*
    892 F. Supp. 486, 491 (S.D.N.Y. 1995)................................................................ 18

*Kiley v. AchieveGlobal, Inc.,*
    No. 3:05-CV-1658, 2006 WL 2475248 (D. Conn. Aug. 24, 2006) ..................... 16

*Koch Engineering Co., Inc. v. Mossanto Co.,*
    621 F. Supp. 1204 (E.D. Mo. Dec. 6, 1985) ........................................................ 17

*Northwest Airlines Inc., v. American Airlines, Inc.,*
    989 F.2d 1002, 1007 (8th Cir. 1993)................................................................... 17

*Rowan Companies, Inc. v. Blanton,*
    764 F.Supp. 1090, 1092 (E.D.La. 1991) .............................................................. 19

*Venture Corp. v. Healy Constr. Co.,*
    No. 88-1351-T, 1988 WL 131354 (D. Kan. Nov. 22, 1988) ................................ 16

*Universal Premium Acceptance Corp. v. Oxford Bank and Trust,*
    No. 02-2448-KHV, 2002 WL 31898217, at *2 (D. Kan. Dec. 10, 2002)............. 17


**State Cases**
*Kreutter v. McFadden Oil Corp.,*
    71 N.Y.2d 460, 467, 522 N.E.2d 40, 43 (N.Y. 1988) ........................................... 11


**Statutes and Rules**
Federal Rule of Civil Procedure 12(b)(2) ........................................................................ 9

Federal Rule of Civil Procedure 12(b)(3) ........................................................................ 9

Federal Rule of Civil Procedure 13(a) ........................................................................... 18

NY CPLR § 302 (a)(1)............................................................................................. 10, 12

NY CPLR § 302 (a)(3)......................................................................................... 10, 12, 13

28 U.S.C. § 1404 ............................................................................................................. 9

## PRELIMINARY STATEMENT

Plaintiff Jeffrey O. Swope ("Swope") respectfully submits this memorandum of law in opposition to Defendant Fiduciary Asset Management, LLC ("FAMCO")'s motion to dismiss the complaint in this action. In this lawsuit, Swope alleges that FAMCO engaged in a scheme to wrongfully retain more than a million dollars in commissions owed to Swope, and then cheat him out of his 8% ownership share of at least $66 million in proceeds from the forthcoming sale of FAMCO to the Piper Jaffrey Companies, by terminating Swope in the dark of night, and denying any further obligation to him. Rather then face Swope's claims in earnest, however, FAMCO now appears intent on cheating Swope out of his forum of choice as well. FAMCO's gamesmanship couldn't be more clear: after Swope sent a written demand letter concerning his claims and making clear that he would litigate, FAMCO responded by preemptively filing a declaratory action in the Eastern District of Missouri, in an obvious "race to the courthouse," intended to multiply the burdens of litigation on Swope, a resident of New York, and engineer what FAMCO hopes will be a favorable backdrop for litigating this dispute.

Clearly, FAMCO believes that it can wear Swope out through endless procedural machinations that temporarily obscure FAMCO's responsibility for the damages alleged in this action. Indeed, rather than timely serve its Missouri declaratory "complaint," FAMCO engaged in numerous harassing attempts at personal service over the course of several months, including a patently offensive attempt at Easter Sunday service, and then, incredibly, moved for default judgment after the time to serve the complaint expired, and moved for costs of service for its outrageous conduct. Suffice it to say, Swope has strenuously opposed those pending motions

and has cross-moved to dismiss the Missouri declaratory action.[1] Meanwhile, rather than answer the complaint or respond to the discovery properly served on it in this action, FAMCO has instead chosen to engage in yet another round of baseless motion practice mirroring its forum maneuvers in Missouri, by asking this Court to dismiss Swope's complaint.

As set forth below, FAMCO's motion to dismiss this action for lack of personal jurisdiction and forum *non conveniens* is without merit, and is predicated on a wildly distorted version of the facts. Apparently FAMCO's institutional memory is short, and its capacity for candor even less, because contrary to the affidavit of its Chief Executive Officer, FAMCO (1) hired Swope with the services of a New York employment recruiter; (2) actively transacted business through Swope in and generated revenue from New York; (3) purposefully availed itself of Swope's services as a senior officer of FAMCO and approved of him residing in and acting on behalf of FAMCO in New York; (4) paid commissions to and undoubtedly continues to owe commissions to Swope in connection with his sales activities in New York; and (5) engaged in and significantly benefited from Swope's efforts to sell FAMCO in New York, including working with investment bankers, marketing the company for sale, and meeting with numerous potential acquirers, all in New York.

At bottom, this is a dispute filed by a New York resident that concerns the breach of an employment agreement negotiated in New York, for services to be and in fact performed to a great extent in New York, concerning business transactions that took place wholly or at least in part in New York. Under these circumstances, it borders on the frivolous to suggest that New

---

[1] For the Court's convenience, a copy of Swope's Opposition to Entry of Default Judgment and Cross-Motion to Dismiss the Complaint in the Missouri action is attached to the Affirmation of Todd A. Higgins, being filed together herewith.

York does not have personal jurisdiction over FAMCO, or that somehow New York is an inappropriate or even inconvenient forum in which to require FAMCO to litigate this dispute.

## FACTUAL BACKGROUND

Swope instituted this action against his former employer FAMCO in order to recover millions of dollars of equity and sales commissions fully earned by Mr. Swope while employed by FAMCO. Mr. Swope first learned of an employment opportunity with FAMCO from Michael Martinolich of Cromwell Partners, an employment recruiter located in New York City. *See* Affidavit of Jeffery A. Swope ("Swope Aff.") at ¶ 2. As part of the recruitment process, Mr. Martinolich assisted with the negotiation of the terms and conditions for Swope's employment, including the place of employment and the commission payments Swope was to receive. *See* Swope Aff. at ¶ 2. Interested in retaining Swope, FAMCO communicated an employment offer in a writing setting forth the terms and conditions of employment, including with respect to the payment of commissions, and sent it to Swope as well as to Mr. Martinolich in New York. *See id.* Mr. Swope accepted the employment offer.

Swope's position with FAMCO largely involved marketing to and developing relationships for FAMCO with major institutional investors that could benefit from FAMCO's asset management products. *See id.* at ¶ 3. Throughout the course of his employment, Swope developed a great deal of business relationships on behalf of FAMCO with a number of companies headquartered in or actively doing business in New York City, including Avon Products, Inc., Colgate-Palmolive Company, Consolidated Edison Company of New York, Inc., Deutsche Bank North America Holding Corporation, Fiat North America, Ford Foundation, General Motors Asset Management, Goldman, Sachs & Co., Guardian Life Insurance of

America, ITT Industries, Inc., JP Morgan Chase & Co., KeySpan Corporation, L.I.C.R. Fund, Inc., Loews Corporation, Memorial Sloan-Kettering Cancer Center, New York Life Insurance Co., New York Times Company, New York University, Novartis Corporation, Pentegra Retirement Services, PepsiCo, Inc., Pfizer, Inc., Philips Electronics North America Corporation, Reed Elseveir, Inc., Siemens Corp., The Church Pension Fund & Affiliates (Episcopal), The Metropolitan Museum of Art, The Rockefeller University, The Wallace Foundation, Time Warner, Inc., United Church of Christ Pension Boards, and YMCA Retirement Fund. *See id.* at ¶ 5. The majority of Swope's compensation from FAMCO came from commissions paid for generating business with such non-Missouri entities, and it was for this reason that Swope was not required to live in St. Louis, Missouri where the company was headquartered. *See id.* at ¶ 4. Rather, Swope lived and worked in New Orleans for the first part of his employment, eventually relocating to New York City where he lived and worked for FAMCO during the last eight months of his employment. *See id.* Swope regularly conducted business on behalf of FAMCO in New York, both before and after moving there, and regularly earned commissions that were based on business that he had brought in from New York. *See id.*

Sometime in the middle of 2005, FAMCO become interested in selling the business, and Swope began meeting regularly with investment bankers and potential acquirers, many of whom were located in or did business in New York. *See id.* at ¶ 6. It was also around this time that FAMCO awarded Swope an 8% equity interest in FAMCO. *See id.* In November 2005, Swope moved to and became a resident of New York State, in part because a substantial portion of the institutional client base he was marketing to on behalf of FAMCO was located in New York, and in part because he was working on the potential sale of FAMCO, which in turn required significant activities in New York. *See id.* Thus, by November 2005, Swope was a full

time employee residing and working for FAMCO in New York. *See id.* In addition, FAMCO knew and approved of his relocation and of his performing services on behalf of FAMCO in New York. *See id.* Swope frequently met with other FAMCO employees and officers in New York, and regularly received Federal Express packages and telephone calls to his home from FAMCO. *See id.* at ¶ 6-7. After later terminating Swope, FAMCO even confirmed in writing that FAMCO had a New York address on file for Swope at the time of termination. *See id.* at 7.

Throughout the remainder of 2005 and through his termination in June 2006, Swope actively worked in New York trying to facilitate a sale of FAMCO. *See id.* at ¶ 9. Swope made considerable progress, including meeting with the President of AIG SunAmerica, Mr. Steve Neamitz, in New York to discuss products FAMCO offered that might be appropriate for AIG as well as introducing FAMCO's Chief Executive Officer Charles Walbrandt to Mr. Neamitz in order to explore a sale of the company. *See id.* In addition, at about the same time that FAMCO was talking to AIG, Swope introduced FAMCO to UBS financial services in New York in order to discuss their interest as investment bankers in representing FAMCO in a sale. *See id.* at ¶ 10. UBS and FAMCO subsequently entered into an agreement for UBS to represent the company. Swope also personally attended high-level meetings with both New York Life and Lehman Brothers' money management unit, Neuberger Berman, to pursue their interest in acquiring FAMCO. *See id.* at ¶ 11-12. As the diligence process for these potential transactions progressed to the point of setting up a "data room" for these firms to conduct detailed financial diligence on FAMCO in late January 2006, Swope was working with people from New York Life in New York, discussing FAMCO's products and how they might be positioned in New York Life's product line up. *See id.* at ¶ 11. Ultimately, New York Life made a substantial offer to acquire

FAMCO, however, Mr. Walbrandt turned the offer down sometime in the second quarter of 2006. *See id.* at ¶ 12.

Thereafter, Mr. Swope continued to pursue sale opportunities on behalf of FAMCO, until, in June of 2006, when FAMCO terminated him without cause or warning while Mr. Swope was away on vacation. *See id.* at ¶ 13. After terminating Swope, FAMCO apparently continued negotiating for a sale of the company and several months later entered into a definitive sale agreement with Piper Jaffray, which has two offices in New York. *See id.* At the time of his termination, Swope was a resident of and was performing a substantial portion of his employment responsibilities in New York. To illustrate just a fraction of the business that Swope transacted on behalf of FAMCO in New York throughout the course of his employment, the following is a partial list of business activity that Swope engaged in on behalf of FAMCO just from the end of 2005 until his termination in June 2006: on November 17, 2005, he met with William Cobb of Affiliates (Episcopal) in New York; on November 17, 2005, he met with David Landau of YMCA Retirement Fund in New York; on November 18, 2005, he met with Joseph Kulhanek of Avon Products, Inc. in New York.; on November 18, 2005, he met with Abashiek Metha of Rockefeller Brothers Fund in New York; on November 18, 2005 and November 29, 2005, he met with Timothy Kiernan of KeySpan Corporation in New York; on November 18, 2005, he met with Lisa Danzig of the Rockefeller University in New York; on November 29, 2005, he met with Maurice Maertens of New York University in New York; on December 1, 2005, he met with Kathy Scudda of Morgan Stanley in New York; on December 1, 2005, he met with Tom Donovon of CSFB in New York; on December 3, 2005, he met with Helen Fox-O'Brien of Affiliates (Episcopal) in New York; on December 7, 2005, he met with David Moroch of Novartis Corporation in New York.; on December 7, 2005, he met with Rob Nagel of

the Wallace Foundation in New York; on December 7, 2005, he met with Clayton Young of ITT Industries, Inc. in White Plains, New York; on December 12, 2005, he met with Graham Arader of Arader Galleries in New York; on January 14, 2006, he met with Gregory Fowlkes of Alternate Investment Group in New York; on April 4, 2006, he spoke with Mike Casel of Overture, located in New York; on April 5, 2006, he met with Ford Graham of Vulcan Capital in New York; on April 6, 2006, he spoke with Don Segalas of Pinnacle Asset Management, in New York; on April 6, 2006, he met with David Saatchi, a retired investor, in New York; on April 7, 2006, he met with Ricky White of Barnard College in New York; on April 7, 2006, he spoke with Tom Leeds of Morgan Stanley in New York; on April 18, 2006, he spoke with Manit Rye of Merrill Lynch in New York; on May 1, 2007, he spoke with Brian Wood and Rick Gould of Morgan Stanley in New York; on May 2, 2006, he spoke with Craig Heatter of JP Morgan Chase in New York; on May 3, 2006, he emailed Manit Rye of Merrill Lynch in New York; on May 3, 2006, he spoke with Yusuf Randera-Rees of Credit Suisse in New York; on May 3, 2006, he spoke with Brendan Wallace and Christof Phiffer of Goldman Sachs in New York; on May 4, 2006, he spoke with Barbara Blakely of Stevenson Partners Housing in New York; on May 8, 2006, he spoke with Brian Wood of Morgan Stanley in New York; on May 8, 2006, he spoke with Craig Heatter of JP Morgan Chase in New York; on May 11, 12, and 16, 2007, he emailed Sam Patel of Bank of America in New York; on May 12, 2006, he spoke with Mark Sutton of UBS in New York; on May 17, 2006, he met with Al Fernandez of Teamsters, Local #807, in New York; on May 18, 2006, he met with Shelby Scott of AFTRA Health and Retirement Funds in New York; on May 18, 2006, he met with Howard Smith of the Starr Foundation in New York; on May 18, 2006, he met with Mark Sutton of UBS in New York; on May 19, 2006, he met with Steven Schiffman of Mac Andrews & Forbes Holdings in New York; on May 19, 2006,

he spoke with Karen Byers of Markle Foundation in New York; on May 24, 2006, he spoke with Mark Sutton of UBS in New York; on May 24, 2006, he spoke with Sam Patel of Bank of America in New York; on May 25, 2006, he met with Bill Williams of Merrill Lynch in New York; on May 25, 2006, he met with Jenny Jung of Bank of America in New York; on June 5, 2006, he spoke with and emailed Jenny Jung of Bank of America in New York; on June 6, 2006, he emailed Brain Wood of Morgan Stanley in New York; on June 8, 2006, he spoke with Brian Williams of Merrill Lynch in New York; and on June 8, 2006, he spoke with Yusuf Randera-Rees of Credit Suisse in New York. *See id.* at ¶ 8.

## PROCEDURAL HISTORY[2]

On January 2, 2007, Swope, by his previous attorney and following termination of his employment by FAMCO submitted a letter to FAMCO demanding that it: (1) deliver all personal property belonging to Mr. Swope to his attorney's office and (2) immediately tender payment to Mr. Swope the amount of $14 million, plus interest at 6% or his attorneys would advise him to initiate a lawsuit naming FAMCO as the defendant. This figure constituted the commissions owed to Mr. Swope by FAMCO, as well as the fair value of Mr. Swope's 8% equity interest in FAMCO. On January 15, 2007, FAMCO responded in writing to the demand letter, indicating its unwillingness to resolve the matter, and advising Swope that any attempt at litigation would be contested. On February 12, 2007, FAMCO filed a declaratory judgment action in the United States District Court, Eastern District of Missouri, Eastern Division seeking to preempt Mr. Swope's threatened filing of a lawsuit against them. Defendant made several improper and

---

[2] The procedural history prior to these instant proceedings is outlined in detail in the opposition papers attached as Exhibit A to the Higgins Affirmation and is summarized here for the court's convenience.

unsuccessful attempts to serve Mr. Swope the summons and complaint. One of these attempts occurred at his relative's home in Austin, Texas, over the Easter holiday weekend in April 2007; however, Mr. Swope was not present at the location when service was attempted. Another attempt at personal service occurred at Mr. Swope's home on May 12, 2007, where again Mr. Swope was not present during the time. The process server then attempted "nail and mail" service by unlawfully entering Mr. Swope's apartment building and attempting to leave a copy of the summons and complaint at his apartment. Any papers that were left behind were recovered by the doorman and provided to the New York City Police Department. On or about July 2, 2007, Mr. Swope's counsel informed FAMCO's counsel that Mr. Swope had not been properly served in this action and could be legally served at 150 East 52nd Street, 11th Floor, New York, New York 10022. FAMCO never attempted to serve Mr. Swope at this location and instead moved for default judgment and had the Clerk for the court in Missouri file an Entry of Default against Mr. Swope at "Plaintiff's request" on August 1, 2007.

In the meantime, Plaintiff commenced an action in the New York State Supreme Court, County of New York, on June 29, 2007, and properly served the summons and complaint on FAMCO at their corporate headquarters in St. Louis, Missouri. Thereafter, FAMCO did not answer or respond to the New York complaint but instead removed the action to the United States District Court for the Southern District of New York on August 2, 2007. FAMCO has since indicated that they will not respond to Mr. Swope's various discovery demands served prior to removal of the state court action, and on August 8, 2007, FAMCO filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(3), as well as 28 U.S.C. § 1404.

## ARGUMENT

I.    **PERSONAL JURISDICTION OVER FAMCO IN NEW YORK IS PROPER SINCE THE TRANSACTIONS ALLEGED IN THE LAWSUIT ARE DIRECTLY CONNECTED TO NEW YORK, PLAINTIFF'S INJURY OCCURRED IN NEW YORK DUE TO TORTIOUS CONDUCT BY DEFENDANT OUTSIDE THE STATE, AND DUE PROCESS IS NOT OFFENDED BY THE EXERCISE OF JURISDICTION OVER DEFENDANT.**

To obtain personal jurisdiction over a defendant, besides effectuating proper notice of the commencement of the litigation, a plaintiff must establish that there is a jurisdictional basis; that is, there must be a sufficient relationship between the defendant and the forum state to justify the state court's power to adjudicate the dispute over the defendant's interests. Swope's complaint properly alleges a basis for jurisdiction over FAMCO under New York's long-arm statute, CPLR § 302 (a) (1) and (3), because the facts demonstrate that the cause of action relates to business transacted by FAMCO in New York and that Swope's injury occurred within the state due to tortious conduct by Defendant outside of New York. Additionally, due process is not offended by the exercise of jurisdiction over Defendant since the facts demonstrate that Defendant had overwhelming contacts with New York that would make it foreseeable for them to be hauled into a court within the state. New York's interests in adjudicating the dispute within the state are substantial and a number of the necessary witnesses are all located within New York, including Swope.

A.    **Personal jurisdiction over Defendant is proper because Plaintiff's complaint alleges causes of action relating to business transacted by Defendant within New York.**

New York's long-arm statute, CPLR § 302 (a)(1) provides for jurisdiction over an out-of-state defendant where it "transacts any business within the state or contracts anywhere to supply goods or services in the state." Proof of only one transaction in New York is enough to maintain jurisdiction over a defendant, even if the defendant has never entered New York, "so long as the

Defendant's activities [in New York] were purposeful and there is a substantial relationship between the relationship and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43 (N.Y. 1988). Often, whether the defendant transacted business in the state is determined by whether the defendant initiated or solicited the business transaction that is disputed that occurred within the state. *Hahn v. Vermont Law Sch.*, 698 F.2d 48 (1st Cir. 1983). In addition, to show that a defendant's activities were purposeful, the plaintiff need only show that the activities within the State were "for the benefit of and with the knowledge and consent of" the Defendant and that the Defendant "exercised some control over" agents of his corporation in New York. *Kreutter*, 71 N.Y.2d at 467.

There is no question here that FAMCO purposefully transacted business within New York sufficient to subject it to personal jurisdiction in New York. FAMCO hired Swope through a New York recruiter who assisted with the negotiation of the terms and conditions of Swope's employment with FAMCO, and was even copied on the employment offer letter. *See* Swope Aff. at ¶ 2. FAMCO employed Swope to market FAMCO's products and services to businesses located in New York, among other places. *See id.* at ¶ 3. FAMCO enjoyed the fruits of Swope's efforts on its behalf in New York to solicit and win business for FAMCO with literally dozens and dozens of entities headquartered in or doing business in New York. FAMCO knew of and approved Swope residing in New York and performing services for FAMCO in New York. *See id.* at ¶ 7. FAMCO availed itself of Swope's activities in New York to retain the investment banking services of UBS in connection with a sale of FAMCO's business. *See id.* at ¶ 10. FAMCO availed itself of Swope's services in New York in working with FAMCO's investment bankers and potential acquirers in connection with a sale of FAMCO. *See id.* at ¶ 9. Under these

circumstances, it stains credulity for FAMCO to suggest that personal jurisdiction does not exist under CPLR § 302 (a)(1).

> **B.      Personal jurisdiction over Defendant is also proper because Plaintiff's injury occurred within New York due to tortious conduct committed by Defendant outside of the state.**

New York's long-arm statute additionally provides for jurisdiction over an out of state Defendant under CPLR § 302 (a)(3), where a defendant:

> Commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he:
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, *or*
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. (*emphasis added*).

FAMCO correctly identifies that New York courts generally apply a "situs of injury" test when determining whether there is an injury in New York sufficient to warrant CPLR § 302(a)(3) jurisdiction. This test asks courts to locate "the original event which caused the injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). However, the Second Circuit has held that the "original event" occurs "where the first effect of the tort . . . that ultimately produced the final economic injury is located," which is distinguishable "not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Id.* at 792.

For example, in *DiStefano v. Carozzi North Am., Inc.*, 286 F.3d 81 (2d Cir. 2001), a New York resident who had been terminated from his employment, which he performed in New York, brought suit in New York against his former employer, who was a Delaware corporation with its principal place of business in Rhode Island, for wrongful termination. The Second Circuit

determined that although the decision to terminate DiStefano and the execution of that decision was done at a meeting held in New Jersey, these acts constituted "the "tortious act without the state" contemplated by the statute and not the "original event" that caused injury to DiStefano." *DiStefano*, 286 F.3d at 85. Rather the original event was found to be DiStefano's experience of being removed from his job, and since he performed his duties in New York, DiStefano experienced the first effect of losing his job in New York, even though he was fired in New Jersey. *Id.* The court further stated that "when a person is employed in New York (or performs a substantial part of their duties or his or her employment in New York), his or her removal from that employment (or from those duties) is a New York event that constitutes "the first effect of the tort" of discharging the employee." *Id.*

As in *DiStefano*, the original event which caused the injury in the present case occurred where Swope experienced the removal from his job, conversion of his property and records, and the breach of his agreement concerning commissions and equity owed him; which was experienced in New York, where Swope resided and was conducting business on behalf of FAMCO. *See* Swope Aff. at ¶ 4. It is of no consequence that the decision to terminate Swope, wrongfully retain his property and fail to pay him his commissions and equity, were all made in St. Louis, Missouri since this fact satisfies only the "tortious act without the state" element of CPLR § 302(a)(3). Additionally, it is important to note that Swope is not premising the basis for § 302(a)(3) jurisdiction on his mere residence in New York. Rather, Swope alleges, as in *DiStefano*, not only residence in New York, but substantial and purposeful employment activities within the state on behalf of his employer located in another state; including Swope's allegation that FAMCO deprived him of commissions and equity ownership which were directly related to the work that Swope was doing on behalf of FAMCO in New York. *See* Swope Aff. at ¶ 4.

13

C.    **Minimum contacts with New York satisfy Due Process.**

Once a plaintiff has satisfied the requirements of the long-arm statute, a plaintiff must still show that the exercise of jurisdiction will not offend the Due Process Clause. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154 (1945). This inquiry requires a determination of whether the defendant maintained minimum contacts with New York. *Id.* This in turn requires an analysis of the foreseeability of being hauled into court as a result of one's actions within the state. *See World Wide Volkswagen v. Woodson,* 444 U.S. 286, 105 S.Ct. 2174 (1980). Thus, a plaintiff must show a "substantial connection" between the defendant's actions and the plaintiff's claims, as well as "purposeful availment" as a means to "ensure[s] that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985).

Unquestionably, FAMCO should have foreseen being hauled into court in New York as a result of availing itself of the services of an employee hired through a New York recruiter to conduct business for FAMCO in New York, and who in fact did conduct business on FAMCO's behalf in New York, and who in fact resided in New York. *See* Swope Aff. at ¶ 2-4. The fact that FAMCO did not pay New York taxes or maintain an office in New York should not allow FAMCO to claim that no contacts have been established with New York. To the contrary, FAMCO actively availed itself of the benefits of doing business in New York, its contacts with New York were purposeful and not merely fortuitous, and the allegations in this case are directly related to those numerous contacts, i.e., the conversion of property and files belonging to an employee in New York and the breach of an employment agreement negotiated in New York, for services to be and in fact performed to a great extent in New York, concerning business transactions that took place wholly or at least in part in New York. *See id.*

**D.    Traditional notions of fair play and substantial justice satisfy Due Process.**

The constitutional due process analysis further requires that the exercise of jurisdiction over the Defendant not violate "traditional notions of fair play and substantial justice." *See generally, World Wide Volkswagen*, 444 U.S. 286. This inquiry takes into account such factors as the burden on the Defendant, the efficiency of litigating in the forum, the interest of the forum state, the Plaintiff's interest in obtaining relief, and the shared interest of the states in furthering public policy goals. *See id.* Here, FAMCO contends that all of the witnesses are in Missouri. That is false. First, Swope himself is an essential witness, as are the business contacts he made for FAMCO, which includes at least 34 entities who are potential witnesses to any number of facts, including the ownership structure of FAMCO, and all of whom would be available in New York. *See* Swope Affidavit at ¶ 5. Second, the recruiter that negotiated the employment agreement between FAMCO and Swope is located in New York, and will undoubtedly be a witness in this case with respect to the commission structure the parties agreed to, and Swope's right to receive his commissions in the event of termination. *See id.* at ¶ 2. In addition, Piper Jaffray maintains two offices in New York, and will at least be a witness if not a defendant, concerning the ownership structure of FAMCO. *See id.* at ¶ 13. In point of fact, any proper narrative characterization of this dispute makes clear that most of the operative facts and witnesses are connected to New York, not Missouri.

FAMCO of course, contends that Missouri law applies and therefore Missouri's interests in the litigation are greater than New York's, however, it is not necessary to analyze choice of law unless there are conflicts between the laws of the two states involved. *See In re Bayou Hedge Fund Inv. Litig.*, 472 F.Supp.2d 534, 540 (S.D.N.Y. 2007). FAMCO has advanced no evidence that the states' laws are in conflict and misdirects the Court to the choice of law

question. FAMCO also ignores New York's considerable interest in protecting an out-of-state employer's employee within New York's borders. *See, e.g. Kiley v. AchieveGlobal, Inc.*, No. 3:05-CV-1658, 2006 WL 2475248 (D. Conn. Aug. 24, 2006). While Missouri may have an interest in FAMCO's rights to litigate in Missouri, surely the doctrine does not stand to allow corporate employers to litigate at their convenience, forcing an individual employee to litigate in a far-away inconvenient forum when an appropriate forum exists where the Plaintiff in fact performed its services on behalf of the company.

## II.    THE "FIRST-FILED RULE" IS INAPPLICABLE SINCE FAMCO'S FILING IN MISSOURI WAS A "RACE TO THE COURTHOUSE".

FAMCO also moves to dismiss on the basis of the "first-filed rule." While it is true that FAMCO filed its declaratory action before Mr. Swope filed suit, which might ordinarily determine which action should proceed, the first-filed rule should not apply where, as here, the first-filed action is a simply a declaratory judgment filed in anticipation of a lawsuit for damages. *See, e.g., Venture Corp. v. Healy Constr. Co.*, No. 88-1351-T, 1988 WL 131354 (D. Kan. Nov. 22, 1988) (granting motion to dismiss because declaratory judgment action was filed in anticipation of lawsuit for damages). The court's analysis in *Creative Compounds, LLC v. Sabinsa Corp.*, No. 1:04CV114CDP, 2004 WL 2601203 (E.D. Mo. Nov. 9, 2004), is illustrative. In that case, the Plaintiff filed a declaratory judgment action in response to Defendant's cease and desist letter promising legal action against Plaintiff if Plaintiff did not conform its conduct by a certain date. The court found that Plaintiff's declaratory judgment action served no other purpose than to deprive the Defendant, the real plaintiff in the dispute, of its choice of forum. *Id.* at *2. The court also looked to whether immediate resolution of the matter was necessary and whether the action was filed in anticipation of litigation. *Id.* Taking those points and weighing

16

the interests of justice all weighed in favor of dismissing the declaratory action. *Id.; see also Koch Engineering Co., Inc. v. Mossanto Co.*, 621 F. Supp. 1204 (E.D. Mo. Dec. 6, 1985).

Another instructive case is *Employers Reinsurance Corp. v. MSK Ins., Ltd.*, No. Civ.A.01-2608-CM, 2003 WL 21143105 (D.Kan. March 31, 2003). The court there noted that when competing interests are filed within a short time of each other, courts may disregard the first-filed rule. *Id.* (citing *Universal Premium Acceptance Corp. v. Oxford Bank and Trust,* No. 02-2448-KHV, 2002 WL 31898217, at *2 (D. Kan. Dec. 10, 2002)). The court looked to whether the adversary filed the mirror image of the same suit in a different district. *Id.* Two other factors that are considered in deciding whether to disregard the first-filed rule are whether the Plaintiff acted in bad faith or filed suit as a race to the courthouse. *See, e.g., Commercial Union Ins. Co. v. Torbaty*, 955 F. Supp. 1162 (E.D. Mo. 1997) (citing *Northwest Airlines Inc., v. American Airlines, Inc.,* 989 F.2d 1002, 1007 (8th Cir. 1993)). If either of these two circumstances is present, then the first-filed rule is not applied and the declaratory judgment action can be dismissed. *Id.* Indeed, the court stated that when a declaratory action is the first-filed case, it is more indicative of a preemptive strike than a suit for damages or equitable relief. *Id.*

Here, FAMCO filed its declaratory action first only because it raced to the courthouse after it received Mr. Swope's demand letter in which Mr. Swope made clear that he would commence litigation against FAMCO if the parties were not able to resolve Mr. Swope's various claims concerning conversion as well as commissions and equity earned by Mr. Swope while employed by FAMCO. FAMCO's declaratory action obviously mirrors the New York Complaint and was filed in an attempt by FAMCO to capture venue ahead of Mr. Swope and thereby deprive Mr. Swope of his choice of forum, which would naturally be where he resides

and in fact performed many of his responsibilities while employed with FAMCO, including attracting institutional investors, arranging and working with investment bankers to organize a potential sale of FAMCO, and meeting with potential buyers of the company.

In order to get around the special circumstances exception to the "first-filed rule" FAMCO's motion papers attempt to inject a semantics argument as to whether the language in Swope's demand letter clearly indicates his intention to file suit if his demands were not met. A reasonable reading of the sentence "In the event FAMCO fails to completely comply with this legal demand, we will recommend that Mr. Swope initiate a lawsuit naming FAMCO and all responsible defendants, seeking an accounting of the value if FAMCO and all amounts owed to Mr. Swope, recovery of the principal amounts due and owing, return of his personal property and files, plus the maximum allowable interest, courts costs, and reasonable attorney's fees," clearly indicates Mr. Swope's intention to file suit and was more than sufficient to provide FAMCO with notice of this intention. Swope was not required to give the expected date of the filing or the forum it would be brought in as long as the intention to file suit is made clear by the notice to the other party. *J. Lyons & Co., Ltd. v. The Republic of Tea, Inc.,* 892 F. Supp. 486, 491 (S.D.N.Y. 1995). FAMCO's "race to the courthouse" in order to preempt Swope's filing undoubtedly fits with the special circumstances exception warranting the rejection of the "first-filed rule."

### III.    PLAINTIFF'S CLAIMS ARE NOT COMPULSORY COUNTERCLAIMS THAT SHOULD HAVE BEEN RAISED IN THE MISSOURI ACTION.

FAMCO also frivolously contends that Swope's claims are compulsory counterclaims that should have been raised in the Missouri action. Federal Rule of Civil Procedure Rule 13(a) makes mandatory any claim that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. However, a defendant cannot claim that a Plaintiff did not

raise compulsory counterclaims if the defendant filed an action first as a "race to the courthouse." *See Franklin v. Diamond Offshore Mgmt. Co.,* No. 93-3940, 1994 WL 144288 (E.D.La. April 18, 1994). If this court were to "resolve the viability of an employee's ... claim through the employer's declaratory judgment action when the employee has filed a subsequent and more complete action ... in another court, then employees would have to engage in a race to the courthouse in order to have their claims heard by a jury or to preserve their forum. Courts should not become unwitting or hapless partners in that unseemly tribal rite." *Rowan Companies, Inc. v. Blanton,* 764 F.Supp. 1090, 1092 (E.D.La. 1991).

For the reasons outlined above, FAMCO's action was filed in a blatant race to the courthouse in response to Swope's demand letter. FAMCO cannot force Swope to raise counterclaims in its declaratory action for the simple reason that FAMCO is merely attempting to deprive Swope of his choice of forum. *Id.*

## IV.    THE DOCTRINE OF FORUM NON CONVENIENS IS NOT APPLICABLE.

Finally, FAMCO also erroneously asserts that Swope's case can be dismissed on the basis of *forum non conveniens.* The doctrine of *forum non conveniens* permits a court to dismiss an action that is before it if, in the court's discretion, it finds that first, the forum is inconvenient for the parties involved and second, that the interests of justice will be served by dismissing the action. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 73 (2d Cir. 1998). However, the doctrine gives deference to a Plaintiff, and requires that an adequate alternate forum exist and that the private interests of the parties be balanced with the public interest in the forum's selection. Additionally, the Supreme Court has stated that "the central focus of the *forum non conveniens* inquiry is convenience" and "dismissal will ordinarily be appropriate only where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court,

and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947)). Additional factors that might be considered also include the ability to implead other defendants. *Piper Aircraft Co.,* 454 U.S. at 267.

While FAMCO may argue that Missouri is an adequate alternate forum, it is Swope that should be given deference and afforded his choice of forum. FAMO argues that court congestion is lesser in Missouri, yet provides no evidence that New York is actually burdened by hearing this particular case, especially in light of its strong nexus to New York. Additionally, FAMCO has not demonstrated how litigating the case in New York would pose an insurmountable inconvenience, let alone any inconvenience to them, especially in light of the fact that Swope has made clear his intention to call a number of essential witnesses within the state and it is likely that the majority of the evidence related to Swope's performance would come from persons whom he associated with in New York on FAMCO's behalf. An additional important consideration is that Swope may yet have no choice but to add other defendants in connection with the pending sale and transfer of Swope's equity interest in FAMCO, such as Piper Jaffray, who would easily be subject to jurisdiction in New York. *See* Swope Aff. at ¶ 13.

FAMCO also cannot falsely argue that Swope should not be afforded his choice of forum because Swope moved to New York on his own initiative, especially in light of the fact that Swope moved there with the intention of tackling a number of business objectives on FAMCO's behalf, which, as demonstrated above, FAMCO clearly benefited from and approved of. *See id.* at ¶ 4, 7. It is in fact precisely these activities that Swope conducted on FAMCO's behalf in New York that are at the heart of Swope's claim and provide a substantial nexus to New York. In sum, Swope's choice of forum in New York should be respected, as he is the plaintiff in this

action, and FAMCO has failed to provide any evidence that FAMCO or the New York courts would be inconvenienced or unduly burdened by litigating this dispute in New York.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Jeffrey Swope respectfully asks that Defendant's motion to dismiss be denied in its entirety.

Dated: New York, New York
　　　　August 23, 2007

CROSBY & HIGGINS LLP

By:    /s/ Todd A. Higgins
　　　　Todd A. Higgins, Esq. (TH 7920)
　　　　500 Fifth Avenue, Suite 1410
　　　　New York, New York 10110
　　　　Tel: (646) 452-2300
　　　　Fax: (646) 452-2301

　　　　*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2007, I electronically filed a corrected copy of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Matthew B. Robinson, Robert W. Stewart and Stanley S. Schroeder
> Lowenbaum Partnership, L.L.C.
> 222 S. Central Avenue
> Suit 901
> St. Louis, MO 63105
>
> (counsel for Defendant)

> /s/ Todd A. Higgins
> Todd A. Higgins, Esq. (TH 7920)
> Crosby & Higgins, LLP
> 500 Fifth Avenue,
> Suite 1410
> New York, New York 10110
> (*phone*) (646) 452-2300
> (*fax*) (646) 542-2301
> thiggins@crosbyhiggins.com
> *Attorneys for Plaintiff*