**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
                                  :

JEFFREY O. SWOPE,                     :
                                    :

                  Plaintiff,         :     Case No. 07-CV-6921 (BSJ)
                                    :

         vs.                        :
                                    :     (*ECF Case*)

FIDUCIARY ASSET MANAGEMENT, L.L.C.,   :
                                    :

                Defendant.     :
                                    :
---------------------------------------------------------------- X

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

Jonathan L. Hochman (JH 7072)
Matthew A. Katz (MK 4252)
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005

*Of Counsel:*

Stanley G. Schroeder, *pro hac vice* pending
THE LOWENBAUM PARTNERSHIP, L.L.C.
222 South Central Avenue, Suite 901
St. Louis, MO 63105

*Attorneys for Defendant*
*Fiduciary Asset Management, L.L.C.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     SUPPLEMENTAL STATEMENT OF FACTS ................................................. 2

III.    ARGUMENT ....................................................................................................... 6

       A.     New York's Long Arm Statute Does Not Reach FAMCO and Due Process Would Be Offended by Subjecting FAMCO to Suit in New York. ........................ 6

              1.     The Lack of Any Relationship Between Swope's Activities in New York and His Causes of Action Prevents Application of the Long Arm Statute. ................................................................... 6

              2.     Swope Has Not Suffered an Injury in New York, So His Tort Cause of Action Does Not Confer Long Arm Jurisdiction to this Court Over FAMCO. ........................................................ 11

              3.     Plaintiff's Unsolicited Move to and His Minimal Contacts in New York Cannot Subject FAMCO to Suit in New York. ................................ 13

       B.     Plaintiff's Arguments That the "First-Filed" Rule Should be Ignored Are Deficient ............................................................................. 15

       C.     The Compulsory Counterclaims Filed By Swope in New York, Rather Than Missouri, Also Counsel Resolution of All Claims in Missouri. ................. 17

       D.     *Forum Non Conveniens* Dictates Dismissal In Favor of the Missouri Action, Because Most of the Witnesses and Evidence are Located in the St. Louis, Missouri Area. ................................................................ 18

       E.     Swope's Affidavit Should Be Disregarded as Containing False Information and Misrepresentations. ................................................ 19

IV.    CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**CASES**

*Adam v. Jacobs,*
950 F.2d 89 (2d Cir. 1991)........................................................................................17

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
902 F.2d 194 (2d Cir. 1990) ......................................................................................6

*Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez,*
171 F.3d 779 (2d Cir. 1999) ......................................................................................6

*Bayou Hedge Fund Investment Litigation,*
472 F. Supp. 2d 534 (S.D.N.Y. 2007).....................................................................14

*Citigroup Inc. v. City Holding Co.,*
97 F. Supp. 2d 549 (S.D.N.Y. 2000).........................................................................7

*Creative Compounds, L.L.C. v. Sabinsa Corp.,*
No. 1:04CV114CDP, 2004 WL 2601203 (E.D. Mo. Nov. 9, 2004)...........................15

*DiStefano v. Carozzi North America, Inc.,*
286 F.3d 81 (2d Cir. 2001).................................................................................11, 12

*Employers Reinsurance Corp. v. MSK Insurance, Ltd.,*
No. Civ. A. 01-2608-CM, 2003 WL 21143105 (D. Kan. Mar. 31, 2003) ..............16, 17

*Erdman Anthony & Assocs., Inc. v. Barkstrom,*
747 N.Y.S.2d 670 (N.Y. App. Div. 2002).................................................................12n

*Feigen v. Advance Capital Mgt. Corp.,*
541 N.Y.S.2d 797 (N.Y. App. Div. 1989) .................................................................12n

*Franklin v. Diamond Offshore Mgmt. Co.,*
Civ. A. No. 93-3940, 1994 WL 144288 (E.D. La. Apr. 18, 1994) ..........................17-18

*Hahn v. Vermont Law School,*
698 F.2d 48 (1st Cir. 1983)........................................................................................11

*Interman Indus. Prods. v. R.S.M. Electron Power, Inc.,*
37 N.Y.2d 151 (N.Y. 1975) ........................................................................................12n

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,*
131 F. Supp.2d 544 (S.D.N.Y. 2001).........................................................................7

*J. Lyons & Company, Ltd. v. The Republic of Tea, Inc.,*
892 F. Supp. 486 (S.D.N.Y. 1995) ................................................................17

*Kiley v. Achieveglobal,*
No. 3:05-CV- 1658(RNC), 2006 WL 2475248 (D. Conn. Aug. 24, 2006) ....................15

*Koch Engineering Co., Inc. v. Monsanto Co.,*
621 F. Supp. 1204 (E.D. Mo. 1985) ...............................................................16

*Kreutter v. McFadden Oil Corporation,*
522 N.E.2d 40 (N.Y. 1988) ..........................................................................11

*Mareno v. Rowe,*
910 F.2d 1043 (2d Cir. 1990) ..................................................................11, 12

*McGrath v. Hilding,*
363 N.E.2d 328 (N.Y. 1977) ........................................................................12n

*Metropolitan Life Inc. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996) ............................................................................6

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,*
138 F.3d 65 (2d Cir. 1998) ...........................................................................17

*Reckson Operating P'ship, L.P. v. New York State Urban Dev. Corp.,*
INDEX No. 00-6126, 2001 WL 1649258 (N.Y. Sup. Ct. Sept. 18, 2001) ....................12n

*Reubenbaum v. B&H Exp. Inc.,*
174 N.Y.S.2d 287 (N.Y. App. Div. 1958) ........................................................13n

*Rowan Cos., Inc. v. Blanton,*
764 F. Supp. 1090 (E.D. La. 1991) .................................................................18

*Savin v. Ranier,*
898 F.2d 304 (2d Cir. 1990) ...........................................................................6

*Seth Rubenstein P.C. v. Hojanidov,*
No. 32306/04, 2006 WL 1816253 (N.Y. Sup. Ct. July 3, 2006) ..............................13n

*Simonds v. Simonds,*
380 N.E.2d 189 (N.Y. 1978) ........................................................................12n

*Snyder v. Ply Gem Inds., Inc.,*
200 F. Supp. 2d 246 (S.D.N.Y. 2001) ...........................................................7, 9

*Venture Corp. v. J.L. Healy Construction Company*,
CIV. A. No. 88-1351-T, 1988 WL 131354 (D. Kan. Nov. 22, 1988) ...........................................15

**RULES**

N.Y. C.P.L.R. 302 .........................................................................................................................7

N.Y. C.P.L.R. 302(a)(1).................................................................................................................7

# I.    PRELIMINARY STATEMENT

Plaintiff's Opposition is replete with hyperbole complaining that he has been victimized by FAMCO's[1] "forum maneuvers," has been subjected to "endless procedural machinations," and generally has been ill treated. While a point-by-point response to Swope's rant serves no real purpose, FAMCO will specify several real facts which Plaintiff misrepresents.

First, Plaintiff started this contest by making an unconscionable demand for $2,000,000 in commissions, which are not owed, and for $12,000,000 for his claimed ownership interest in FAMCO, which did not exist and was not granted to Plaintiff. FAMCO did not begin this baseless fight.

Second, Plaintiff's suggestion that FAMCO "raced" to the courthouse to "preempt" Plaintiff's natural forum choice is laughable. Plaintiff threatened FAMCO with a lawsuit and demand for immediate payment of $14,000,000, plus interest at 6%, on January 2, 2007. (Higgins Decl.[2] Ex. A.) FAMCO responded on January 15, 2007 and waited nearly another month, until February 12, 2007, to sue the quiet Plaintiff. (Higgins Decl. Ex. B; Katz 9/10/07 Decl.[3] Ex. D.) Plaintiff then dodged service for months and waited until June 29, 2007 to initiate this action. This pace is hardly a race. Plaintiff had plenty of time to sue; he now is simply unhappy that FAMCO called his bluff.

Third, FAMCO is accused of cheating Plaintiff out of his forum choice. FAMCO is hard pressed to determine what Plaintiff's "forum choice" should be. For several years, Plaintiff worked for a St. Louis, Missouri firm in which he seeks an interest. While he worked for

---

[1]    All capitalized terms herein have the same meaning assigned in Defendant's Opening Brief.

[2]    "Higgins Decl." herein refers to the Declaration of Todd A. Higgins in opposition to FAMCO's motion to dismiss.

[3]    "Katz 9/10/07 Decl." herein refers to the September 10, 2007 Declaration of Matthew A. Katz in Support of FAMCO's Motion to Dismiss. Exhibit D is the complaint filed by FAMCO in the Eastern District of Missouri.

FAMCO, he was based and lived in St. Louis and lived at various addresses in New Orleans, Louisiana and Austin, Texas.  He threatened suit in Austin, Texas even while he avers he was a New York resident.  Plaintiff's natural forum, therefore, is debatable.

Finally, Plaintiff is responsible for the motion practice here.  FAMCO offered Plaintiff a straightforward way to settle his grievances by filing a declaratory judgment where the Company in which Plaintiff seeks an interest is located, where Plaintiff worked and lived, and where he earned his allegedly unpaid commissions.  Plaintiff could have simply accepted service and, if he saw fit, contested that forum as inappropriate, without jurisdiction, inconvenient, etc.

Instead, Plaintiff dodged service, defaulted on a validly filed action, brought this action, and now complains because FAMCO is exercising its rights to contest Plaintiff's irresponsible obstreperous tactics.  (Katz 9/10/07 Decl. Ex. E.)[4]  The problems here are of Plaintiff's making. This matter is easily resolvable: Swope should drop this proceeding and litigate in Missouri where Plaintiff is already embroiled in another dispute – trying to undo his negligent default.

## II.   SUPPLEMENTAL STATEMENT OF FACTS

In his Opposition to FAMCO's Motion, Plaintiff has relied upon several facts that he contends support exercise by this Court of personal jurisdiction over FAMCO under New York's long arm statute.  Plaintiff's allegations are fabrications.

**First**, Plaintiff emphasizes that beginning in November 2005, while employed by FAMCO, he moved to and became a resident of New York, with FAMCO's approval.  (Swope Aff.[5] ¶¶ 4, 6, 7.)  Swope, however, did not become a resident of New York until after his

---

[4]     Exhibit E to the Katz 9/10/07 Decl. is the Memorandum filed by FAMCO in the Eastern District of Missouri to recoup its costs of service.  That Memorandum details the many service attempts made upon Swope. Exhibit F is the Affidavit of Stanley G. Schroeder in Support of Motion for Recovery of Costs.

[5]     "Swope Aff." herein refers to the Affidavit of Jeffrey O. Swope submitted in opposition to FAMCO's motion to dismiss.

employment with FAMCO ended, has misrepresented his status to the Court, and has falsified

his Affidavit as the following illustrates:

- On January 19, 2006 – months after his alleged move to New York – Plaintiff e-
  mailed FAMCO stating that his permanent address was in **Texas**.  (Walbrandt
  9/10/07 Aff.[6] ¶ 9.)

- This statement was consistent with Plaintiff's directions that his 2005 Form W-2 be
  mailed to his residence at 901 West 9th Street, Unit 410, Austin, Texas 78703.
  Further, the Company did not withhold any income tax from Swope's compensation
  for 2005 and 2006 based upon his Texas residency, per Swope's instructions.
  (Walbrandt 9/10/07 Aff. ¶ 5.)

- This was corroborated by Plaintiff's e-mail of July 13, 2006, to FAMCO's Chief
  Operating Officer, Joseph Gallagher, in which he indicated that his lease in Austin,
  Texas did not terminate until the end of June 2006.  (Walbrandt 9/10/07 Aff. ¶ 6.)

- Swope did not tell FAMCO until July 17, 2006, after termination from FAMCO's
  employment, that his new address was 10 Liberty Street, Apt. 44E, New York, New
  York 10005.  (Walbrandt 9/10/07 Aff. ¶ 7.)

- While allegedly "residing" in New York, Swope submitted expenses for
  reimbursement including hotel stays in New York, New York while on "business
  travel."  For instance, on June 12, 2006, Mr. Swope sought reimbursement for
  $1,937.28 for a stay at the Four Seasons Hotel in New York.  (Walbrandt 9/10/07 Aff.
  ¶¶ 23, 25.)

---

[6]    "Walbrandt 9/10/07 Aff." herein refers to the September 10, 2007 Affidavit of Charles D. Walbrandt in
Support of Motion to Dismiss, filed simultaneously herewith.

- In addition, and again while allegedly residing in New York, Swope sought reimbursement for an airline ticket from New York, which he described on his expense report as "airfare for travel home after business trip in New York." Swope's destination was New Orleans, Louisiana. (Walbrandt 9/10/07 Aff. ¶ 24.)

While Plaintiff was employed by FAMCO, he was no more a New York resident than the Queen of England. Plaintiff conveniently became a New York resident to pursue this case. Or, maybe he was a New York resident and misrepresented his status to defraud FAMCO for reimbursement for business travel expenses while in his New York residence. Or, maybe he was a New York resident trying to defraud the New York state taxing authorities by claiming Texas residency. In any case, averring New York residence while employed by FAMCO is a canard. Plaintiff's Affidavit in this regard is a fabrication.

**Second,** the Company did not approve a move to New York in November 2005. This assertion is ridiculous given the foregoing disclosures. Further, if Plaintiff had actually relocated to New York during November 2005, Plaintiff would not have sought reimbursement for hotel expenses incurred in New York as business travel expenses. Likewise, he would not have incurred travel expenses from New York while stating that he was returning "home" from business travel in New York. Moreover, FAMCO paid to relocate Plaintiff to St. Louis, Missouri so that he could be available in St. Louis. (Walbrandt 9/10/07 Aff. ¶ 4.)

**Third**, Plaintiff emphasized his having "developed a great deal of business relationships on behalf of FAMCO" with New York companies and identified 31 entities with which he allegedly had developed a relationship for FAMCO. (Swope Aff. ¶ 5.) Plaintiff's claims are specious. With two limited exceptions,[7] FAMCO had (and has) **no** business relationship with

---

[7] FAMCO worked for General Motors Asset Management and L.I.C.R. Fund. As to General Motors, FAMCO was doing business with it before hiring Plaintiff and he did nothing to enhance that relationship. As to

these organizations, has received no requests to do business with them, has submitted no proposals to them, has performed no services for them, has received no revenue from them, and has no regular or irregular contact with them. (Walbrandt 9/10/07 Aff. ¶ 11.)

Likewise, Plaintiff has identified 46 meetings and conversations with New York "clients or contacts" as supporting his contention that he conducted business for FAMCO in New York. (Swope Aff. ¶ 8.)  With a single exception,[8] no client relationships resulted from any of these contacts.  While FAMCO has had limited contact with a few of these organizations, (Walbrandt 9/10/07 Aff. ¶¶ 14-15), no business, client relationship, subsequent meetings, or fees resulted. (Walbrandt 9/10/07 Aff. ¶¶ 14-15.)

**Finally,** Plaintiff stresses his involvement in the sale of FAMCO to justify jurisdiction in New York. Plaintiff's representations are fabrications.

- Plaintiff avers that FAMCO's Chief Executive met with executives of AIG SunAmerica regarding a potential sale of FAMCO and AIG's presumed serious interest.  (Swope Aff. ¶ 9.)  Of course, Plaintiff cannot establish how he knew of such "meetings" and for good reason: no such discussions occurred nor was any alleged "interest" registered.  (Walbrandt 9/10/07 Aff. ¶ 17.)

- Plaintiff represents that he arranged for FAMCO's Chief Executive to meet representatives of UBS implying that the introduction led to UBS representing FAMCO in its business sale efforts.  The sale of FAMCO was not the purpose of any meetings with FAMCO's Chief Executive. (Walbrandt 9/10/07 Aff. ¶ 18.)

---

L.I.C.R. Fund, Inc., this organization contacted FAMCO to solicit a proposal to manage money for it based upon L.I.C.R. Fund's own research.  Swope did not solicit them or play a material role in obtaining this client. (Walbrandt 9/10/07 Aff. ¶¶ 12-13.)

[8] Rockefeller Brothers Fund is a client; however, Swope did not generate the contact and played no significant role in developing that business relationship.  (Walbrandt 9/10/07 Aff.  ¶¶ 14-15.)

- Plaintiff offers that his work with New York Life led to it extending to FAMCO's Chief Executive an offer to purchase FAMCO.  (Swope Aff. ¶ 12.)  Again, Plaintiff lays no foundation for how he knows of such negotiations or offer.  This is logical since New York Life made no offer to purchase FAMCO.  (Walbrandt 9/10/07 Aff. ¶ 19.)

Plaintiff was not involved in, or responsible in any way for, the sale of FAMCO or negotiation of such a transaction and was not authorized to engage in any negotiations or to "shop" FAMCO to prospective buyers.  Plaintiff simply had no role in negotiating or arranging for the sale of FAMCO.  (Walbrandt 9/10/07 Aff. ¶ 20.)

## III.    ARGUMENT

### A.    New York's Long Arm Statute Does Not Reach FAMCO and Due Process Would Be Offended by Subjecting FAMCO to Suit in New York.

#### 1.    The Lack of Any Relationship Between Swope's Activities in New York and His Causes of Action Prevents Application of the Long Arm Statute.

Plaintiff bears the burden of proof in establishing personal jurisdiction over FAMCO. *Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999); *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).  In the absence of an evidentiary hearing, Plaintiff's showing "must include an averment of facts that, if credited by the trier [of fact], would suffice to establish jurisdiction over the defendant ... [meaning] the *prima facie* showing must be factually supported."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990); *Metropolitan Life Inc. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996).

To establish jurisdiction over FAMCO, Plaintiff relies upon New York's long arm

statute, N.Y. C.P.L.R. 302.  (Swope Compl. ¶ 3.)[9]  The relevant portion of New York's long-arm

statute, N.Y. C.P.L.R. 302(a)(1), contains two requirements: (1) the non-domiciliary must

transact business within the state, and (2) the claim against the non-domiciliary must arise out of

that business activity.  *Snyder v. Ply Gem Inds., Inc.*, 200 F. Supp. 2d 246, 249 (S.D.N.Y. 2001);

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,* 131 F. Supp. 2d 544, 440 (S.D.N.Y. 2001).  There

must be "a strong nexus between the plaintiff's cause of action and the defendant's in state

conduct."  *Snyder*, 200 F. Supp. 2d at 249; *Citigroup Inc. v. City Holding Co.,* 97 F. Supp. 2d

549, 564 (S.D.N.Y. 2000).

Plaintiff contends that a series of alleged activities of FAMCO confer long arm

jurisdiction over FAMCO.  These activities, however, fail to create the requisite "strong nexus"

to support jurisdiction because these alleged activities have nothing to do with Plaintiff's claims.

        **a.**    **<u>Use of a New York Recruiter.</u>**  Plaintiff emphasizes that FAMCO's use

of a recruiter in New York to hire him is somehow material.  Whom FAMCO used to recruit

Plaintiff years ago is irrelevant.  Plaintiff's claims have no connection with the search process,

have no connection to the recruiter or the recruiter's venue.  Swope has made no claim to being a

New York resident at that point in time.

        **b.**    **<u>Plaintiff's Alleged Multiple New York Contacts</u>**.  Plaintiff claims that

he was hired to market FAMCO to institutional investors, some of whom may have been in New

York.  Plaintiff points to dozens of "contacts" he had with New York businesses and persons as

evidence he performed services in New York related to his causes of action.  Swope, however,

did not generate a right to commissions from his New York contacts, as discussed below.

---

[9]    "Swope Compl." herein refers to the Original Complaint filed by Swope on June 29, 2007 in New York Superior Court and thereafter removed to this Court on August 8, 2007.

Plaintiff complains that FAMCO promised commissions to Plaintiff on revenue from assets that **he raised**.  (Swope Compl. ¶ 7.)  Plaintiff then avers that he raised millions in assets from institutional investors which, in turn, resulted in millions of dollars of investment management revenue for FAMCO.  (Swope Compl. ¶ 10.)  Plaintiff then pleads that FAMCO failed to pay Plaintiff $1,300,000 in commissions owed to him on revenue obtained from assets **raised by Plaintiff**.  (Swope Compl. ¶ 19.)  Further, Plaintiff avers that commissions were **earned** when **Plaintiff procured** customer orders **and** that commissions were due then.  (Swope Compl. ¶ 22.)

Plaintiff, however, does not identify a single New York-based person or entity whose business he actually procured for FAMCO and from whom FAMCO generated revenue upon which Plaintiff would have been entitled to a commission.  Swope presents no evidence that this list of New York "contacts" actually resulted in any New York business for which he would be entitled to commissions.  Consistent with Plaintiff's failure to identify one New York-based client whom Plaintiff procured for FAMCO, FAMCO's Chief Executive Officer corroborates Plaintiff's inability to have sourced a single New York client.  (Walbrandt 9/10/07 Aff. ¶ 10.)

Plaintiff cannot rely upon "contacts" with New York prospects to support long arm jurisdiction as to FAMCO because his cause of action is not grounded in "contacts."  Instead, Plaintiff's claim is that he is owed commissions on revenue obtained from assets **raised by Plaintiff** and that his commissions were **earned** when **Plaintiff procured** customer orders.  In other words, Plaintiff claims he is entitled to commissions based upon assets that he procured. (Swope Compl. ¶ 22.)

Therefore, to support long arm jurisdiction, at a minimum, Plaintiff must link his claim for unpaid commissions to business that he allegedly generated among New York clients.

*Snyder*, 200 F. Supp. 2d at 249. Plaintiff, however, did not actually generate any new business with New York clients. (Walbrandt 9/10/07 Aff. ¶ 10.) Plaintiff, therefore, did not generate any right to commissions which are now unpaid from fees received by FAMCO from New York clients. This dooms his personal jurisdiction argument because there is no connection between his New York activities and revenues generated which would create commission income.

Assuming, *arguendo*, Swope met his burden of demonstrating that he generated business in New York, he has not tied that business to his causes of action. Swope claims commissions on a breach of contract theory and an unjust enrichment theory. However, while Swope may have arguably generated a right to commissions via activity in New York, the commission payment decisions were made in St. Louis, Missouri. Swope's St. Louis, Missouri contract dictates whether he will receive commissions or not. *Snyder*, 200 F. Supp. 2d at 249.

        c.    **New York Residence**. As further support for this Court's exercise of jurisdiction under the Long Arm Statute, Plaintiff claims to have moved to New York during the final eight months of his employment with FAMCO's approval to work for FAMCO's business.

As noted in FAMCO's Supplemental Statement of Facts above, Swope's actions belie his claims. Plaintiff told FAMCO that his residence was in Texas; Plaintiff represented himself as a Texas resident for tax purposes; Plaintiff did not notify FAMCO of his move until after his employment with FAMCO ended; Plaintiff represented himself as on travel status during trips to New York when he was allegedly a New York resident and sought out of town travel reimbursements while allegedly in his hometown; he even submitted travel costs for trips "home" from New York. Further, FAMCO paid to relocate Plaintiff to St. Louis. FAMCO can scarcely be considered to have "approved" his move.

         **d.**    **New York Connection with Sale of FAMCO.**  Swope alleges that he made contacts for FAMCO with various entities, such as AIG, UBS, New York Life, Lehman Brothers, etc. which somehow facilitated the sale of FAMCO's business. These allegations are irrelevant in assessing this Court's ability to exercise jurisdiction under New York's Long Arm Statute because they have nothing to do with Plaintiff's claims.

        Swope's claim for accounting and constructive trust in Count Five and demands in Count Six to inspect corporate books and records relate to his claim that he has an eight percent interest in FAMCO and has somehow been denied the benefits thereof. These claims have nothing to do with alleged attempts by FAMCO to sell its business. Moreover, Plaintiff does not allege that any of these contacts related in any way to his alleged entitlement to the interest in FAMCO which he now seeks. Further, FAMCO's actual sale is to Piper Jaffray, a Minnesota-based operation and none of the negotiations or aspects of this transaction happened or had their genus in New York. (Walbrandt 9/10/07 Aff. ¶¶ 28-29.)

        Accordingly, Plaintiff's authority in support of his proposition that FAMCO is amenable to jurisdiction in New York is inapposite. His first case, *Kreutter v. McFadden Oil Corporation*, 522 N.E.2d 40, 44 (N.Y. 1988), involves the actual transaction of business, specifically delivery of money in New York by a New York resident to a Texas company with an office in New York. *Kreutter*, 522 N.E.2d at 41-42. The plaintiff attempted to establish New York jurisdiction over two Texas companies and an individual shareholder of the companies who resided in Texas by claiming that a different company that was incorporated in Texas, but had an office in New York was the agent of the aforementioned Texas defendants. *Id.* at 42-43. The company in New York had received money from the plaintiff at its New York office, and sent the money to the Texas defendants. *Id.* at 42. The case discussed the fiduciary shield doctrine in this regard. *Id.* at 43.

*Kreutter*, therefore, is factually distinguishable. In this case, Swope never received money in New York from FAMCO, nor did FAMCO have a New York office or agent.

The second, *Hahn v. Vermont Law School* concerned the Massachusetts long arm statute and involved a Vermont law school's recruitment of students in Massachusetts as the basis of long arm jurisdiction. 698 F.2d 48 (1st Cir. 1983). In that case, the plaintiff learned of the school by reading an advertisement in the *Boston Globe*. *Id.* at 49. The plaintiff then requested an application, which the school sent to his address in Massachusetts. *Id.* When the plaintiff was awarded an "F" in the secured transaction class, he sued the school and his professor. *Id.* The court ruled long arm jurisdiction pursuant to the Massachusetts long arm statute existed based on the school's mailing an application packet and acceptance letter to the plaintiff in Massachusetts, its sending recruiters to Massachusetts to seek applicants, and having about ten percent of its first year students being Massachusetts-based students. *Id.* at 50-52. In this case, Swope has not pointed to any similar contacts of FAMCO with New York. There is no claim Swope was a New York resident when he was recruited, no evidence FAMCO regularly seeks business in New York, and no evidence that FAMCO regularly engages any agents to seek business in New York.

### 2. Swope Has Not Suffered an Injury in New York, So His Tort Cause of Action Does Not Confer Long Arm Jurisdiction to this Court Over FAMCO.

Swope relies upon *DiStefano v. Carozzi North America, Inc.* for support that the situs of his injury was New York. 286 F.3d 81 (2d Cir. 2001). *DiStefano* and the case discussed by it, *Mareno v. Rowe*, reveal the weakness of Swope's argument that the situs of his injury was in New York. *Compare DiStefano*, 286 F.3d at 85, *with Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990). *DiStefano* distinguished *Mareno* on the basis that in *Mareno* the plaintiff was hired to work in New Jersey, while in *DiStefano* the plaintiff was hired to work by a non-New York employer **in an office in New York from which he did work**. *DiStefano*, 286 F.3d at 85. Both

*Mareno* and *DiStefano* support the proposition that the effect of a tortious discharge is typically first felt at the situs of the employment – which in *DiStefano* was in New York, while in *Mareno* was not in New York.  *Id.*

The instant case is completely different from *DiStefano* and more closely parallels *Mareno*.  Here, and unlike *DiStefano*, Swope was hired for employment based in St. Louis, Missouri; no averment has been made that he had an office created for him in New York or was to have located there.  Unlike *DiStefano,* FAMCO has no New York office, nor expected Swope to move to New York, work from New York, or to operate a facility there.  In fact, the Company's preference was for Swope to move to St. Louis and be present in St. Louis.  (Walbrandt Aff.[10] ¶¶ 7-13, 19-25.)  The company had no knowledge that Swope had relocated to New York until after his employment ended.  (Walbrandt Aff. ¶¶ 13-14.)  Moreover, as discussed above and in the supporting papers hereto, Plaintiff's averment that he moved to New York during his employment is a complete fabrication.

Most importantly, the primary claim alleged in *DiStefano* was in tort.  The only tort Swope has alleged was FAMCO's alleged conversion of his property in St. Louis, Missouri.  (Swope Compl. Count III.)  The claims for account stated,[11] unjust enrichment,[12] and quantum

---

[10]    "Walbrandt Aff." herein refers to the Affidavit of Charles D. Walbrandt filed on August 8, 2007.

[11]    "An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due" *Erdman Anthony & Assocs., Inc. v. Barkstrom*, 747 N.Y.S.2d 670, 671 (N.Y. App. Div. 2002) (citations omitted).  An essential element of an account stated is an agreement with respect to the amount of the balance due.  *Interman Indus. Prods. v. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 153-54 (N.Y. 1975).

[12]    "Unjust enrichment is a quasi-contract claim."  *Reckson Operating P'ship, L.P. v. New York State Urban Dev. Corp.*, INDEX No. 00-6126, 2001 WL 1649258 (N.Y. Sup. Ct. Sept. 18, 2001); *Feigen v. Advance Capital Mgt. Corp.*, 541 N.Y.S.2d 797, 799 (N.Y. App. Div. 1989).  A person is unjustly enriched when it would be unjust for him or her to retain a benefit received, considering the circumstances of the transfer and the parties' relationship. *McGrath v. Hilding,* 363 N.E.2d 328, 331 (N.Y. 1977).  The person enriched need not commit any wrongful act. *Simonds v. Simonds,* 380 N.E.2d 189, 194, 45 N.Y.2d 233 (N.Y. 1978).

meruit[13] are not tort claims but are contract or quasi-contract claims. (Swope Compl. Counts II, IV.) Conversion of Plaintiff's personal property located in St. Louis is a Missouri, not a New York, injury.

### 3.    Plaintiff's Unsolicited Move to and His Minimal Contacts in New York Cannot Subject FAMCO to Suit in New York.

Plaintiff was never required or asked to move to New York. This was Plaintiff's adventure – **initiated after he left FAMCO's employment**. FAMCO preferred Plaintiff to be in St. Louis and had no idea he was residing in New York, if in fact he was doing so. Plaintiff's mere desire to be in New York, without more, cannot justify hauling FAMCO into New York courts.

Section I(C) of Swope's opposition brief claims he was "hired through a New York recruiter *to conduct business for FAMCO in New York*." (Swope Opp.[14] at 14 (emphasis added).) The only **evidence** is that FAMCO hired Plaintiff to live and work in St. Louis, paid to move Plaintiff to St. Louis, and based him there. (Walbrandt Aff. ¶¶ 16-21.) Even if Plaintiff is believed, he resided in New York only during eight months of his four-year tenure. (Swope Aff. ¶ 4.) More importantly, Plaintiff did not generate a single client in New York. (Walbrandt 9/10/07 Aff. ¶ 10.)

---

[13]    "Quantum meruit is simply defined as the "value of the services" performed by an attorney for a client. *Reubenbaum v. B&H Exp. Inc.*, 174 N.Y.S.2d 287, 287, 6 A.D.2d 47 (N.Y. App. Div. 1958). Unlike an "account stated" which is contractual, "quantum meruit" is quasi- contractual in nature. *Seth Rubenstein P.C. v. Hojanidov*, No. 32306/04, 2006 WL 1816253, at *5 (N.Y. Sup. Ct. July 3, 2006).

[14]    "Swope Opp." herein refers to Plaintiff's memorandum of law in opposition to FAMCO's motion to dismiss.

Plaintiff's arguments also ignore most factors that play into the due process inquiry focusing instead only on the potential for New York witnesses. (*See* Def. Opening Br. at 16.)[15] But even these are very suspect. For instance:

- Plaintiff contends that his many New York "contacts" would be witnesses. None of these "contacts," however, became clients because of Swope's efforts, so they could not offer any testimony to support Plaintiff's claims for commissions.

- Swope's claim that a New York recruiter may be a witness is likewise attenuated. Such testimony would be unlikely, because the terms of his employment are contained in a letter and it is the intention of the parties – not the recruiter – that controls such terms.

- Swope's claim that Piper Jaffray could be a witness is likewise unavailing. First, the negotiation with Piper occurred among FAMCO's St. Louis staff and Piper's Minneapolis personnel: there were no New York contacts. (Walbrandt Aff. ¶¶ 28-29; Swope Aff. ¶ 13.) Second, Piper Jaffray cannot possibly address Plaintiff's claims for commission entitlements or rights to ownership since all allegedly occurred well before Piper was even known to FAMCO.

Swope claims that the due process inquiry into choice of law does not factor in unless the law is different in one state than it is in another state. As support, Plaintiff relies upon *Bayou Hedge Fund Investment Litigation*, 472 F. Supp. 2d 534 (S.D.N.Y. 2007). But that case is inapplicable to this matter. In *Bayou Hedge*, after its personal jurisdiction ruling, the court had to determine whether Connecticut law or New York law applied. *Id.* at 540. The choice of law discussion did not involve personal jurisdiction and the case does not even refer to due process.

---

[15]    "Def. Opening Br." herein refers to FAMCO's Memorandum of Law in Support of Its Motion to Dismiss filed on August 8, 2007.

Finally, Plaintiff claims that New York has an interest in protecting an out-of-state employer's employees located in New York; again, however, the precedent upon which he relies, *Kiley v. Achieveglobal*, No. 3:05-CV- 1658(RNC), 2006 WL 2475248 (D. Conn. Aug. 24, 2006) is inapposite.  First, while the Court's discussion of venue did indicate that Connecticut had an interest in providing a forum to aggrieved employees, the facts are totally distinguishable from this case.  The employees in *Kiley* had been hired by a Florida company and directed to work for it from their Connecticut homes.  2006 WL 2475248 at *1.  Here, Plaintiff was not hired, nor was he required, to work in New York.  Second, in *Kiley*, the relevant statute provided for nationwide service.  *Id.*  No such statute applies here.

**B.    Plaintiff's Arguments That the "First-Filed" Rule Should be Ignored Are Deficient.**

The cases relied upon by Plaintiff do not in any manner impugn the first-filed rule.  In *Venture Corp. v. J.L. Healy Construction Company*, the Court faced two suits in the same District of Kansas.  CIV. A. No. 88-1351-T, 1988 WL 131354 (D. Kan. Nov. 22, 1988).  One of the suits had a third party surety as an additional defendant, the other did not.  *Id.* at *2.  The Court, therefore, dismissed the suit that did not have the surety joined.  *Id.*

Swope also relies on *Creative Compounds, L.L.C. v. Sabinsa Corp.*, No. 1:04CV114CDP, 2004 WL 2601203 (E.D. Mo. Nov. 9, 2004), for support that the Missouri Action[16] was filed in anticipation of litigation.  In *Creative Compounds,* the defendant's demand letter "***guaranteed*** prompt legal action," unlike Swope's letter.  *Id.* at *1, 3 (emphasis added). Swope's letter failed to identify any deadline for compliance (Katz 8/8/07 Decl.[17] Ex. A) and did

---

[16]    "Missouri Action" herein refers to the lawsuit filed by FAMCO in the Eastern District of Missouri, *Fiduciary Asset Management, L.L.C. v. Jeffrey O. Swope*, Case No. 4:07-cv-00301-HEA, United States District Court, Eastern District of Missouri, Eastern Division.

[17]    "Katz 8/8/07 Decl." herein refers to the August 8, 2007 Declaration of Matthew A. Katz in support of FAMCO's motion to dismiss Plaintiff's complaint.

not identify the ultimate litigation forum.  Further, Plaintiff's letter was hardly a guarantee of prompt legal action; indeed, Plaintiff waited six months to sue.

Swope further cites *Koch Engineering Co., Inc. v. Monsanto Co.*, 621 F. Supp. 1204 (E.D. Mo. 1985), as support.  In *Koch Engineering*, the parties were engaged in settlement negotiations.  *Id.* at 1206.  The defendant informed the plaintiff that the statute of limitations in Texas was to run in early August.  *Id.*  In response, the plaintiff filed a declaratory action and defendant then filed in Texas within two weeks.  *Id.*  Clearly, Plaintiff's actions here were hardly as compelling, having waited months to sue.

More importantly, *Koch Engineering* identified the purposes of the Declaratory Judgment Act as minimizing the risk of avoidable losses, preventing the unnecessary accumulation of damages, and permitting a party threatened with liability the ability to have that liability adjudicated quickly.  621 F. Supp. at 1206.  Here, FAMCO's actions were absolutely in line with those goals.  Plaintiff's demand letter sought millions in damages plus interest at 6% per annum. (Higgins Decl. Ex. A.)  Every month of delay risked additional damages of $70,000.  Further, FAMCO was interested in selling its business and the threat of major litigation, particularly a claim obscuring title to 8% of its ownership, could do nothing but inhibit sale.  Early adjudication was clearly in FAMCO's best interest.

Swope also relies on *Employers Reinsurance Corp. v. MSK Insurance, Ltd.*, No. Civ. A. 01-2608-CM, 2003 WL 21143105 (D. Kan. Mar. 31, 2003).  In that case, however, the first-filed rule was rejected, because the plaintiff filed the action just days before a mediation, hid the lawsuit until after the mediation, and the defendant filed its competing lawsuit within eleven weeks of the first-filed action.  *Id.* at *5-6.  The Court balanced the convenience of the two

forums and determined that the majority of witnesses and the substantive law favored the second action as more convenient. *Id.* at *7-9.

Here, FAMCO did not sandbag Plaintiff, but promptly responded to Swope's demand, and waited another month before filing its lawsuit. (Katz 9/10/07 Decl. Ex. D; Swope's Complaint.) Plaintiff, however, waited six months after his letter and five months after the Company filed its lawsuit before filing this action. (Katz Decl. Ex. A; Katz 9/10/07 Decl. Ex. D.)

Plaintiff's cases from Kansas and Missouri are factually inapposite and Plaintiff ignores *J. Lyons & Company, Ltd. v. The Republic of Tea, Inc.,* 892 F. Supp. 486 (S.D.N.Y. 1995), which reveals the inadequacies of Swope's demand letter as "special circumstances" to avoid application of the first-filed rule.

Plaintiff's January, 2007 letter did not threaten imminent suit – which was confirmed by his taking ***six months*** thereafter to file suit. Further, Plaintiff cannot claim that FAMCO raced to the courthouse to deny Plaintiff his choice of forum. Rather, FAMCO waited nearly six weeks after Plaintiff's demand to sue in Missouri –giving Plaintiff plenty of time within which to sue if he wished. Even then, FAMCO's suit preceded Plaintiff's by ***five months***.

## C.     The Compulsory Counterclaims Filed By Swope in New York, Rather Than Missouri, Also Counsel Resolution of All Claims in Missouri.

Swope claims that FAMCO's compulsory counterclaim argument is "***frivolous,***" but in so arguing ignores *Adam v. Jacobs*, 950 F.2d 89, 92-93 (2d Cir. 1991), which provides that failing to file compulsory counterclaims and instead instituting a separate action violates the spirit of Rule 13. Plaintiff instead cites distinguishable opinions from Louisiana. Each of Plaintiff's cases involve the Jones Act which specifies that seamen pursuing a Jones Act claim are specifically permitted their choice of forum. *Franklin v. Diamond Offshore Mgmt. Co.*, Civ. A.

No. 93-3940, 1994 WL 144288, at *2 (E.D. La. Apr. 18, 1994) (Plaintiff "asserts his Jones Act claim in a federal court of competent jurisdiction pursuant to 18 U.S.C. § 1333(a), which saves to seamen their choice of forum."); *Rowan Cos., Inc. v. Blanton*, 764 F. Supp. 1090, 1092 (E.D. La. 1991) ("[I]t may be significant that a maintenance and cure claim joined with a Jones Act claim must be submitted to a jury when both arise out of one set of facts. . . . These considerations greatly influence this ruling."). Accordingly, these cases are irrelevant.

D.  ***Forum Non Conveniens* Dictates Dismissal In Favor of the Missouri Action, Because Most of the Witnesses and Evidence are Located in the St. Louis, Missouri Area.**

Swope misconstrues the first step of the forum *non conveniens* inquiry, which is a determination of where "litigation will be **most** convenient" and not, as Plaintiff argues, if "the forum is inconvenient for the parties involved." *Compare PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998) *with* Pl.'s Memo. Opp. Mot. Dismiss at 19. Swope advances five reasons he believes New York is the most convenient forum.

First, Swope claims his forum choice should have deference. *PT United Can Co. Ltd.*, recognizes that a plaintiff's choice is to be respected, but that where an adequate alternative exists, a balancing test should be conducted to determine whether "the balance tilts strongly in favor of the purported alternative forum." 138 F.3d at 74. Here, doubtless an adequate alternative exists; thus, the Court must balance the parties' interests not blindly rely upon Plaintiff's choice.

Second, Swope claims there is no proof that the Southern District of New York "is actually burdened by hearing this particular case." FAMCO does not doubt that this Court could find time on its docket for this action; a comparison of the two forums, however, reveals that the judges of the Eastern District of Missouri have ***relatively*** lighter caseloads than judges in the Southern District of New York. (Def. Opening Br. at 23.)

Third, Swope claims that his identification of potential witnesses within New York contradicts FAMCO's claim that Missouri is the more convenient forum. As discussed above, these witnesses are very unlikely to possess relevant information. Thus far, the pleadings of the parties do not dispute the business that generates commissions for Swope, but rather, that those commissions need not be paid to Swope following his termination. In this scenario, these business contacts would have no relevant information.

Fourth, Swope claims he may "have no choice but to add other defendants," such as Piper Jaffray. Swope claims that the entity that purchases FAMCO may be needed to insure protection of his alleged equity interest in FAMCO. Such a tactic, however, is not necessary. Swope had an adequate remedy at law, namely, filing compulsory counterclaims involving an accounting and placing a constructive trust on the sales proceeds in the Missouri Action.

Fifth, Swope claims he moved to New York "with an intention of tackling a number of business objectives on FAMCO's behalf," and claims FAMCO "approved of" the move. The affidavits of Charles Walbrandt, however, clearly refute that claim and Swope has not presented any evidence to refute Walbrandt's affidavits. It is clear FAMCO never approved of, much less even knew of, Swope's decision to move to New York.

**E.      Swope's Affidavit Should Be Disregarded as Containing False Information and Misrepresentations.**

The Court should disregard the Swope's Affidavit as lacking any credible weight, as it is replete with misleading and false statements. Most revealing is Swope's claim he moved to New York in November 2005. (Swope Aff. ¶¶ 4, 6.) However, the evidence reveals that Swope informed FAMCO on January 19, 2006, that he was a permanent resident of Texas. (Walbrandt 9/10/07 Aff. ¶ 9.) Moreover, Swope claims FAMCO knew of and approved of his move to New York. (Swope Aff. ¶ 7.) FAMCO, however, clearly believed Swope to be a resident of Texas.

(Walbrandt 9/10/07 Aff. ¶ 8.)  Furthermore, during or following November 2005, Swope charged

hotel rooms in New York, claiming them as business expenses.  (*Id.* ¶¶ 25, 27.)  Swope also

charged as a business expense a flight from New York to New Orleans, claiming it was for

"[t]ravel home following meetings in NYC."  (*Id.* ¶ 24.)

Swope also made misleading statements suggesting that he generated a right to

commission payments from companies he dealt with in New York.  (Swope Aff. ¶¶ 4, 5, 8.)

That is categorically false.  (Walbrandt 9/10/07 Aff. ¶ 10.)  Swope also attempts to mislead the

Court by suggesting the proposed sale of FAMCO to Piper Jaffray involved Piper Jaffray

representatives in New York.  (Swope Aff. ¶ 13.)  FAMCO, however, dealt with Piper Jaffray

representatives in Minneapolis, Minnesota instead.  (Walbrandt 9/10/07 Aff. ¶¶ 28-29.)

Swope's affidavit also falsely suggests that he had a role in FAMCO's potential sale.

(Swope Aff. ¶¶ 6, 9-13.)  Swope, however, was not authorized by FAMCO to negotiate or

arrange for the sale of FAMCO, nor did he have any authorized role in acquiring or contacting

potential purchasers for the Company.  (Walbrandt 9/10/07 Aff. ¶ 20.)

In paragraphs 8(oo) and 8(pp) Swope claims he was engaged in meetings on May 25,

2006 in New York.  The evidence reveals, however, that Swope was actually in Austin, Texas

and San Antonio, Texas on May 25, 2006.  (Walbrandt 9/10/07 Aff. ¶ 16.)

Swope claims that he arranged meetings between AIG and FAMCO's Chief Executive

Officer, Charles Walbrandt.  (Swope Aff. ¶ 9.)  Walbrandt, however, never had any such

meetings concerning the sale of FAMCO.  (Walbrandt 9/10/07 Aff. ¶ 17.)  Similarly, while UBS

and FAMCO did meet, it was not regarding a potential sale of FAMCO as alleged by Swope.

(Swope Aff. ¶ 10; Walbrandt 9/10/07 Aff. ¶ 18.)  Swope's claim that he obtained an offer to

purchase the company from New York Life is a fabrication.  (Swope Aff. ¶ 12; Walbrandt 9/10/07 Aff. ¶ 19.)

As the foregoing reveals, Swope's affidavit is nothing more than self-serving statements, misrepresentations, and outright fabrications.  Accordingly, Swope's affidavit should be disregarded as lacking any probative force.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Fiduciary Asset Management, L.L.C.'s motion to dismiss the claims asserted by Plaintiff Jeffrey O. Swope should be granted with prejudice.


Dated: New York, New York
         September 10, 2007

SCHINDLER COHEN & HOCHMAN, LLP

/s/ Matthew A. Katz
Jonathan L. Hochman (JH 7072)
Matthew A. Katz (MK 4252)

100 Wall Street
15th Floor
New York, New York  10005
(212) 277-6330
(212) 277-6333 (facsimile)


**OF COUNSEL:**

Stanley G. Schroeder, *pro hac vice* pending
The Lowenbaum Partnership, L.L.C.
222 South Central Avenue, Suite 901
Clayton, MO 63105
(314) 863-0092
(314) 746-4848 (facsimile)

*Attorneys for Defendant*
*Fiduciary Asset Management, L.L.C.*