# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FIDUCIARY ASSET MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| vs. | ) | |
| | ) | |
| JEFFREY O. SWOPE, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Comes now Plaintiff, FIDUCIARY ASSET MANAGEMENT, LLC, by and through its

attorneys, and states to the Court as follows

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and

28 U.S.C. § 2201, because the citizenship of the parties is diverse and Plaintiff seeks declaratory

judgment.

2.      Plaintiff is a Missouri limited liability company and, on information and belief,

Defendant is a resident and citizen of the state of either Texas, Louisiana or New York.

Defendant is not a resident or citizen of the state of Missouri.

3.      The amount in controversy in this matter exceeds $75,000, because Defendant has

threatened suit against Plaintiff for Fourteen Million Dollars ($14,000,000,00) plus other relief

with respect to the facts alleged herein.

4.      Personal jurisdiction over Defendant is based upon the Missouri long-arm statute,

R.S. Mo. §§ 506.500.1(1) and (2) because: (a) Defendant has regularly transacted business in the

state of Missouri, (b) Defendant's threatened claims and Plaintiff's request for declaratory

judgment arise from that business, and (c) Defendant has claimed compensation and payments

and has threatened immediate litigation with respect to compensation and an ownership interest

in Plaintiff based upon contract(s) which Defendant contends were or must have been formed in Missouri.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial part of the claim described in this action occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

**PARTIES**

6.    Plaintiff, Fiduciary Asset Management, LLC, is, and was at all times noted in this Complaint, a Missouri limited liability company in good standing, engaged in commerce, and doing business in Missouri.

7.    Plaintiff's principal place of business is located in the Eastern District of Missouri at 8112 Maryland Avenue, Suite 400, St. Louis (Clayton), Missouri 63105.

8.    At all times relevant to this action, Plaintiff has been engaged in the business of providing investment management and advisory services to a variety of entities including tax exempt entities, such as retirement plans and trusts, and their corporate sponsors and high net worth individuals.

9.    As a Missouri limited liability company, Plaintiff's ownership structure and operations are governed by an operating agreement, i.e. the "Operating Agreement," which is required and created pursuant to Missouri limited liability company law.

10.    The Operating Agreement is expressly governed by Missouri law.

11.    This Operating Agreement describes the nature of membership and ownership interests which Members may have as well as Member entitlements to payments, distributions, liquidation proceeds and redemption or liquidation values.

12.    Plaintiff is a registered investment advisor under the Investment Company Act of 1940 and is licensed to provide investment management and investment advisory services in Missouri and several other states.

13.     Plaintiff is an investment sub-advisor for several mutual funds and maintains and operates limited partnerships which Plaintiff has developed and pursuant to which shares and interests are issued in compliance with the Investment Company Act of 1940, the Securities Act of 1933 and Missouri law.

14.     As part of its investment management and advisory services, Plaintiff has developed and maintains a variety of other investment management and advisory products, services and strategies designed to appeal to a variety of investor groups and investment and asset allocation strategies.

15.     Plaintiff obtains fee income from the users of its investment management and advisory services pursuant to a variety of investment management, investment advisory and investment administrative service arrangements.

16.     Plaintiff also generates fee income from revenues earned by providing investment advice to those mutual funds, limited partnerships, other investment vehicles and strategies which it advises or has developed and maintains and pursuant to which it has issued, and continues to issue, shares and interests.

## EMPLOYMENT OF DEFENDANT BY PLAINTIFF

17.     During 2002, Plaintiff decided to retain the services of an employee to lead in marketing its products and services and to obtain wider exposure for them within the financial community.

18.     Plaintiff retained the service of an executive recruiting firm to locate qualified candidates for a new marketing position

19.     The executive recruiting firm proposed Defendant as a candidate for the position.

20.     Defendant met with Plaintiff in its St. Louis facility to interview for the position.

21.    Defendant proposed an initial marketing approach to promote and gain wider exposure for Plaintiff's business within the financial community and to induce Plaintiff to hire him.

22.    On or about March 29, 2002 and in reliance upon Defendant's promises and assurances regarding implementation and development of a marketing strategy, Plaintiff made an offer of employment to Defendant.

23.    Plaintiff conveyed that offer of employment to Defendant through a letter (i.e., the "Offer Letter") dated March 29, 2002.

24.    The Offer Letter described terms of compensation which may be payable to Defendant during his employment, stated the date by which the offer must have been accepted and stated approximately when employment would commence.

25.    The Offer Letter did not provide for any payments of compensation to Defendant after his termination of employment with Plaintiff.

26.    At no time during the interview process or during Defendant's employment, did Plaintiff promise or even suggest that Defendant would be paid any of the compensation opportunities described in the Offer Letter after Defendant's termination of employment from Plaintiff.

27.    The Offer Letter did not describe: (a) the scope of Defendant's duties, (b) any performance objectives or goals, (c) that termination would only be for good cause, (d) Defendant's reporting relationship, (e) the location of Defendant's performance, or (f) the nature of any supervisory duties which Defendant may have.

28.    The Offer Letter did not describe Defendant's expected hours of work or place of work.

29.    The Offer Letter did not contain an offer of employment for any specific period, nor a statement that Defendant's employment would last for a specific period, nor a statement that it could end only as a result of termination for cause.

30.    At no time did Plaintiff make an offer of employment to Defendant for any definite term or period, nor did Plaintiff and Defendant ever agree that Defendant would be employed for a definite term or period.

31.    At no time did Plaintiff and Defendant form or enter into any written or oral employment contract which specified a definite term of employment or which specified terms and conditions of employment.

32.    At no time did Plaintiff and Defendant form or enter into any written or oral contract which provided for any payments of compensation or commissions to Defendant following his termination of employment with Plaintiff.

33.    Defendant commenced employment with Plaintiff on April 5, 2002.

**DEFENDANT'S EMPLOYMENT AND CONTACTS WITH THIS DISTRICT**

34.    While Defendant worked for Plaintiff, Defendant performed various marketing and business development services for Plaintiff as its Senior Vice President, Director of Marketing and Client Relations (from July, 2002 through November, 2004) and as Managing Director, Business Development and Investor Relations from November, 2004 until his termination of employment.

35.    Defendant understood and acknowledged that his primary duties were (a) to promote the Plaintiff's services, products and investment management and advisory performance among the investment community, (b) to educate other investment management and advisory consultants regarding the nature and quality of Plaintiff's services and performance, (c) to develop and implement a comprehensive marketing and business development plan including the aforementioned tasks, (d) to enhance Plaintiff's website to display information that would

enhance Plaintiff's reputation and assist with marketing its services and (e) to develop standard marketing and informational materials.

36.    While employed by Plaintiff, Defendant was provided an executive office by Plaintiff at its facility in St. Louis, Missouri and Defendant routinely used that office.

37.    Although Defendant traveled extensively outside of Missouri while employed by Plaintiff:

   (a)    Defendant and his position were based in St. Louis, Missouri;

   (b)    Defendant had been advised by Plaintiff that he was to spend time in its St. Louis office to be a marketing resource and to be available to consult with Plaintiff's senior management located in St. Louis regarding assessment and development of marketing strategy;

   (c)    When Defendant became employed by Plaintiff, he was advised that he was to relocate to St. Louis;

   (d)    During the first year of his employment with Plaintiff, Defendant was generally present in his St. Louis office every week and for much of each week.

   (e)    Later during his employment with Plaintiff, Defendant's physical presence in Plaintiff's St. Louis office was somewhat reduced but he generally continued to appear in and work from that office periodically, i.e. sometimes on a weekly basis and sometimes on a monthly basis.

   (f)    Defendant received instructions from and coordinated his services with individuals located in St. Louis, Missouri.

38.    While employed by Plaintiff, Defendant reported directly to and was supervised by the Plaintiff's Manager, Charles D. Walbrandt, who was located in Plaintiff's St. Louis, Missouri facility.

39.    While employed by Plaintiff, Defendant routinely met with Mr. Walbrandt at Plaintiff's St. Louis, Missouri facility to discuss various operational, performance and strategy issues.

40.    During periods when Defendant was in Plaintiff's St. Louis facility, he typically met with Mr. Walbrandt on a daily basis.

41.    While employed by Plaintiff, Defendant routinely met with other of Plaintiff's senior executives at Plaintiff's St. Louis, Missouri facility to discuss various operational, performance and strategy issues.

42.    During periods when Defendant was in Plaintiff's St. Louis facility, he met with other members of Plaintiff's senior management on a daily basis.

43.    While employed by Plaintiff, Defendant supervised, or assisted with the supervision of, approximately nine (9) of Plaintiff's employees at various times.

44.    Of these personnel supervised by Defendant, six (6) were located in Plaintiff's St. Louis, Missouri facility.

45.    While employed by Plaintiff, Defendant routinely met at Plaintiff's St. Louis, Missouri facility with the personnel whom he supervised and generally did so on multiple occasions during most months.

46.    For approximately one year while employed by Plaintiff, Defendant maintained a residence located in St. Louis County, Missouri.

47.    While employed by Plaintiff, Defendant maintained a bank account at The Business Bank of St. Louis, located at 8000 Maryland Avenue, Ste. 100, St. Louis (Clayton), Missouri.

48.    While employed by Plaintiff, Defendant was routinely paid by Plaintiff and his pay was calculated, approved and issued from its St. Louis, Missouri facility and/or from Plaintiff's agents located in St. Louis County, Missouri.

49.    Plaintiff's bi-weekly paychecks were direct deposited to his account maintained at The Business Bank of St. Louis.

50.    While traveling on behalf of Plaintiff, Defendant incurred various airfare, hotel, rental car, subsistence and other business expenses.

51.    To obtain reimbursement for business expenses incurred while traveling for Plaintiff, Defendant periodically submitted expense reports to Plaintiff at its St. Louis, Missouri facility for approval and payment.

52.    While Defendant was employed by Plaintiff, Defendant was provided with a variety of compensations including a base salary and various employee benefits including health insurance, long term disability insurance, group life insurance and participation in an employer-paid, tax qualified defined contribution profit sharing plan.

53.    Plaintiff's employee health benefit plan, in which Defendant participated and through which Defendant and his family was insured, was maintained in St. Louis, Missouri.

54.    Plaintiff's tax qualified, defined contribution retirement plan, in which Defendant participated, was maintained in St. Louis, Missouri.

## LIMITED LIABILITY COMPANY INTERESTS

55.    While Defendant was employed by Plaintiff, Defendant was also provided, as part of his package of compensation, membership in Plaintiff as a Class B member.

56.    As a condition to obtaining the Class B membership interest in Plaintiff, Defendant was required to execute various documents such as Bylaws and other corporate instruments.

57.    On or about May 31, 2002, Defendant executed these documents at Plaintiff's St. Louis (Clayton), Missouri facility.

## TERMINATION OF DEFENDANT'S EMPLOYMENT

58.    On July 3, 2006, Plaintiff terminated Defendant's employment.

59.     Plaintiff terminated Defendant's employment because, *inter alia*: (a) he had failed to adequately perform his primary task of growing and maintaining Plaintiff's service fee volume, (b) during the year prior to his termination of employment, Defendant's business development practices and efforts had radically and rapidly deteriorated, (c) he had failed to maintain effective and consistent contact with investment consultants and other primary product and service marketing services, (d) he had misled senior management regarding the nature and effectiveness of contacts which he had allegedly maintained with investment consultants and advisors, (e) he had failed to develop markets for very successful products and services which Plaintiff had developed, (f) he had deliberately misused Plaintiff's business credit card by charging to it tens of thousands of dollars of personal expenses, (g) he was deliberately insubordinate to Plaintiff's management by continuing to use Plaintiff's credit card for personal expenditures after having been specifically and repeatedly instructed not to do so, (h) he had lied to Plaintiff's management by representing that he had not used Plaintiff's business credit card for personal purposes immediately after Plaintiff had used it extensively for purchase of tens of thousands of dollars of personal items and (i) he had generally failed to do important tasks for which he was hired and which he proposed to do in the marketing program which he outlined to induce Plaintiff to retain him in the first instance.

60.     Plaintiff terminated Defendant's employment in St. Louis, Missouri by issuing Defendant a letter of termination on July 3, 2006.

61.     By July 19, 2006 following termination of Defendant's employment, Plaintiff had paid all compensation due to Defendant through his termination of employment.

## DEFENDANT'S COMPENSATION FROM PLAINTIFF

62.     Plaintiff provided Defendant a variety of employee benefits as described in Paragraph 52 above.

63.    Plaintiff paid Defendant a base salary of varying amounts which equaled or exceeded $200,000 per year on a bi-weekly basis.

64.    Plaintiff initially offered to pay to Defendant certain additional amounts as "commissions" based upon percentages of Plaintiff's service fee revenues as outlined in Defendant's Offer Letter.

65.    Shortly after Defendant was hired in April, 2002, Plaintiff and Defendant agreed that additional payments of compensation through "commissions," as described in the Offer Letter, would not be made to Defendant.

66.    In lieu of receiving payments of "commissions" as described in the Offer Letter, Plaintiff and Defendant instead agreed that Defendant would be granted a Class B membership interest in Plaintiff.

67.    This interest was granted to Defendant during May, 2002 and instead of receiving payments of commissions, Defendant became eligible to receive quarterly distributions of profits from Plaintiff's operation.

68.    As a result, during Defendant's entire period of employment with Plaintiff, Defendant did not receive any payments from Plaintiff which were denominated as, paid as or structured as "commissions."

69.    Instead and commencing on January 9, 2003, Defendant began receiving distributions of Plaintiff's profits as a Class B Member of Plaintiff.

70.    On January 9, 2003, Defendant first received a distribution of Plaintiff's profits for the calendar year ended December 31, 2002.

71.    Thereafter, Defendant received a distribution of Plaintiff's profits following the close of each calendar quarter.

72.     Pursuant to agreement between Plaintiff and Defendant, these distributions were made by reason of Defendant's Class B membership interest in Plaintiff and Plaintiff's Operating Agreement and for no other reason.

73.     Pursuant to the Operating Agreement, Defendant had no specific right to any distributions of cash or property or allocations of income or loss.

74.     Pursuant to the Operating Agreement, any distributions of cash or property or allocation of income or loss made to Defendant, as a Class B member, were made to him on a totally discretionary basis by Plaintiff.

75.     Pursuant to Section 4.1 of Plaintiff's Operating Agreement, distributions would be made by Plaintiff in cash or other property only at such times and as recommended by the Manager of Plaintiff, Charles D. Walbrandt, and upon unanimous consent of all Class A Members.

76.     Pursuant to Section 4.2.2 of Plaintiff's Operating Agreement, profits for any period would be allocated to Members only at such times and as recommended by the Manager of Plaintiff, Charles D. Walbrandt, and upon approval by all Class A Members.

77.     Pursuant to Section 4.1 of Plaintiff's Operating Agreement, the actual amount of any distributions which may be made to any Member of Plaintiff would be determined pursuant to such methodology as may be developed by Charles D. Walbrandt after consultation with the Class A Members.

78.     While Defendant was a Class B Member, Plaintiff elected to allocate to Defendant, on a quarterly basis, a portion of Plaintiff's profits.

79.     This discretionary allocation of profits to Defendant was developed based upon application of the percentages to Plaintiff's service fee revenues as outlined in the Offer Letter to Defendant.

80.    The amounts allocated on a quarterly basis to Defendant as profits by reason of his Class B membership in Plaintiff were at least equal to amounts which would have been paid as "commissions" based upon percentages of Plaintiff's service fee revenues as outlined in Defendant's Offer Letter.

81.    The Manager determined, in his discretion, to make Plaintiff actually pay out to Defendant, on a quarterly basis, amounts allocated to Defendant as profits described above.

82.    While Defendant was employed by Plaintiff, these allocations of profit and payments were recommended to and approved by Plaintiff's Class A Members.

83.    Pursuant to Section 3.3 of the Operating Agreement, Plaintiff maintained a Capital Account for each of Plaintiff's Members.

84.    While Defendant was employed by Plaintiff and was a Class B Member of Plaintiff, Plaintiff credited (increased) Defendant's Capital Account with all quarterly allocations of profit which the Manager determined, and the Class A Members authorized, to make to Defendant.

85.    While Defendant was employed by Plaintiff and was a Class B member of Plaintiff, Plaintiff debited (decreased) Defendant's Capital Account with all quarterly distributions made to Defendant.

86.    Distributions made to Defendant equaled the amount of Plaintiff's profits which were allocated to Defendant.

87.    At the time of Defendant's termination of employment from Plaintiff, the balance of Defendant's Capital Account equaled zero because (a) the amount of distributions made to Defendant from Plaintiff equaled all profit allocations credited to his Capital Account and (b) no other credits were made, or should have been made, to his Account pursuant to the Operating Agreement.

88.     On July 19, 2006 and August 10, 2006 following Defendant's termination of employment, Plaintiff made final allocations of profits to Defendant for the second calendar quarter of 2006 which were recognized while Defendant was employed.

89.     On July 19, 2006 and August 10, 2006, Plaintiff paid the same sums to Defendant.

90.     Pursuant to Section 6.2 of the Operating Agreement, if Defendant ceased to be employed by Plaintiff for any reason, Plaintiff was obligated to redeem all of Defendant's Membership Interest in Plaintiff.

91.     Pursuant to Section 6.2 of the Operating Agreement, the value of the redemption price was set at an amount equal to the balance of Defendant's Capital Account on the date of Defendant's termination of employment.

92.     Upon termination of Defendant's employment by Plaintiff, the value of his Capital Account equaled zero.

93.     Accordingly, upon Defendant's termination of employment with Plaintiff, his Class B Membership interest with Defendant was redeemed and cancelled with no further payment due.

### DEFENDANT'S THREATENED CLAIMS AGAINST PLAINTIFF

94.     On January 2, 2007, Defendant, through his counsel, sent a letter (Appendix 1 attached hereto).

95.     In this letter (the "Demand Letter"), Defendant threatened to sue Plaintiff in Austin, Texas unless Plaintiff immediately paid to Defendant the sum of Fourteen Million Dollars ($14,000,000.00) plus interest at the rate of six percent (6%) from the dates on which the various components of that sum first became due.

96.     In Defendant's Demand Letter, Defendant alleged that he had a contract of employment with Plaintiff.

97.    Defendant, despite his prior agreement to receive profit distributions from Plaintiff by reason of his Class B membership in Plaintiff and despite no agreement existing which would provide compensation payments to Defendant following his termination from employment, Defendant alleged that Plaintiff still owed him continued payment of quarterly commissions following Defendant's termination of employment based upon percentages of Plaintiff's revenue yet to be earned by Plaintiff.

98.    Defendant demanded that he is owed Two Million Dollars ($2,000,000.00), plus interest, which equals Defendant's erroneous calculation of the present value of these commissions yet to be earned by Plaintiff after Defendant's termination from employment.

99.    In Defendant's Demand Letter, Defendant also contends that he is still an eight percent (8%) owner of Plaintiff.

100.    Defendant erroneously contends that this interest has a value of Twelve Million Dollars ($12,000,000.00).

101.    Defendant contends that because he was involuntarily terminated and "forced out" of Plaintiff's employment, Defendant is entitled to payment from Plaintiff of the alleged fair market value of his presumed membership interest of $12,000,000.00 plus interest.

102.    Defendant's Letter advised that unless Plaintiff immediately tendered payment to Defendant the sum of Fourteen Million Dollars ($14,000,000.00) plus interest, Defendant would institute suit against Plaintiff to collect this sum plus other legal and equitable remedies.

## COUNT I – REQUEST FOR DECLARATORY JUDGMENT ON BREACH OF EMPLOYMENT CONTRACT AND COMPENSATION OBLIGATIONS

103.    Plaintiff realleges and incorporates by reference ¶¶1 through 104 above.

104.    The facts and matters set forth above present a justiciable controversy and are ripe for adjudication, *inter alia*:

(a)    Plaintiff contends that it has never had an employment agreement with Defendant;

(b)    Plaintiff contends that its employment relationship with Defendant was at will and could be terminated at any time for any reason or no reason;

(c)    Plaintiff contends that the Offer Letter and Defendant's employment with Plaintiff did not create any post-termination of employment obligation to make any continued payments of commissions or compensation to Defendant;

(d)    Defendant contends that he had a contract of employment with Plaintiff;

(e)    Defendant contends that, pursuant to his alleged contract of employment with Plaintiff, he is entitled to immediate payment of Two Million Dollars ($2,000,000.00) in present value for commissions to be payable after Defendant's termination of employment based upon future earnings which may or may not be realized by Plaintiff;

(f)    Defendant has actually threatened immediate suit to establish the existence of an employment contract with Plaintiff which provides for payment of the aforementioned sum and to enforce and collect this sum;

107.    Pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57, Plaintiff is entitled to the declaratory relief set forth below.

WHEREFORE, Plaintiff prays this Court as follows:

(a)    To issue a declaratory judgment that Plaintiff has no employment contract with Defendant;

(b)    To issue a declaratory judgment that Plaintiff has paid all sums due to Defendant;

(c)    To issue a declaratory judgment that Plaintiff has no obligation to make payment of any compensation/commissions to Defendant after his termination of employment based upon future earnings which may or may not be realized by Plaintiff or otherwise;

(d)    To award Plaintiff its costs and attorneys' fees; and

(e)    To issue such other relief as the Court may deem just and proper.

**COUNT II – REQUEST FOR DECLARATORY JUDGMENT THAT DEFENDANT
FUNDAMENTALLY BREACHED ANY CONTRACT WHICH MAY HAVE EXISTED**

108.    Plaintiff realleges and incorporates by reference ¶¶ 1 through 107 above.

109.    This Count is alleged in the alternative to Count I in the event that this Court determines that a contract of employment, or a contract to pay commissions or other compensation to Defendant after his termination of employment with Plaintiff, actually existed.

110.    If it is determined that a contract of employment, or a contract to pay commissions to Defendant after his termination of employment with Plaintiff, actually existed, Defendant's actions described in Paragraph 61 so fundamentally breached his obligations of performance and fiduciary duties to Plaintiff that any further duties of employment or payment to Defendant ended upon Defendant's termination of employment with Plaintiff.

111.    The facts and matters set forth above present a justiciable controversy and are ripe for adjudication, *inter alia*:

(a)    Plaintiff contends that it has never had an employment agreement with Defendant;

(b)    Plaintiff contends that its employment relationship with Defendant was at will and could be terminated at any time for any reason or no reason;

(c)    Plaintiff contends that the Offer Letter and Defendant's employment with Plaintiff did not create any post-termination of employment obligation to make any continued payments of commissions or compensation to Defendant;

(d)    Plaintiff contends that if Plaintiff and Defendant did have a contract of employment or a contract to pay commissions to Defendant after his termination of employment with Plaintiff, Defendant's actions described in Paragraph 61 so fundamentally breached his obligations of performance and fiduciary duties to

Plaintiff that any further duties of employment or payment to Defendant ended upon his termination of employment;

(e)     Defendant contends that he had a contract of employment with Plaintiff;

(f)     Defendant contends that, pursuant to his alleged contract of employment with Plaintiff, he is entitled to immediate payment of Two Million Dollars ($2,000,000.00) in present value for commissions to be payable after Defendant's termination of employment based upon future earnings which may or may not be realized by Plaintiff;

(g)     Defendant has actually threatened immediate suit to establish the existence of an employment contract with Plaintiff which provides for payment of the aforementioned sum and to enforce and collect this sum.

112.    Pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57, Plaintiff is entitled to the declaratory relief set forth below.

WHEREFORE, Plaintiff prays this Court as follows:

(a)     To issue a declaratory judgment that Plaintiff has no employment contract with Defendant;

(b)     To issue a declaratory judgment that Plaintiff has paid all sums due to Defendant;

(c)     To issue a declaratory judgment that Plaintiff has no obligation to make payment of any compensation/commissions to Defendant after his termination of employment based upon future earnings which may or may not be realized by Plaintiff or otherwise;

(d)     To award Plaintiff its costs and attorneys' fees; and

(e)     To issue such other relief as the Court may deem just and proper.

## COUNT III – REQUEST FOR DECLARATORY JUDGMENT ON FAILURE TO REDEEM LIMITED LIABILITY COMPANY INTERESTS

113.    Plaintiff realleges and incorporates by reference ¶¶ 1 through 112 above.

114.    The facts and matters set forth above present a justiciable controversy and are ripe for adjudication, *inter alia*:

(a)    Plaintiff contends that upon Defendant's termination of employment with Plaintiff, Defendant's Class B membership interest was redeemable in an amount equal to the value of his Capital Account;

(b)    Plaintiff contends that at the time of Defendant's termination of employment, Defendant's Capital Account was valued at zero;

(c)    Plaintiff contends that Defendant, therefore, was not entitled to any further payment upon termination of his employment by Plaintiff for redemption of his Class B Membership in Plaintiff;

(d)    Accordingly, Plaintiff contends that Defendant has no further membership or ownership interest in Plaintiff;

(e)    Defendant contends that he continues to have an eight percent (8%) ownership interest in Plaintiff;

(f)    Defendant contends that upon his involuntary termination of employment, he was entitled to have his ownership interest in Plaintiff redeemed for its then fair market value;

(g)    Defendant contends that he is entitled to receive an immediate payment of Twelve Million Dollars ($12,000,000.00) as the value of his ownership in Plaintiff;

(h)    Defendant has directly threatened immediate suit to establish the existence of his ownership interest in Plaintiff, to establish the value of that interest at $12,000,000 and to enforce and collect this sum.

115.    Pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57, Plaintiff is entitled to the declaratory relief set forth below.

WHEREFORE, Plaintiff prays this Court as follows:

(a)    To issue a declaratory judgment that upon termination of Defendant's employment with Plaintiff, Defendant was only entitled to have his Class B membership interest redeemed for the value of his Capital Account at the date of his termination of employment;

(b)    To issue a declaratory judgment that the value of Defendant's Capital Account at termination of employment was zero;

(c)    To issue a declaratory judgment that Defendant has no current ownership or membership interest in Plaintiff;

(d)    To issue a declaratory judgment that Plaintiff has no further obligation to make payment of any sums to Defendant in redemption of his ownership or membership interests in Plaintiff;

(e)    To award Plaintiff its costs and attorneys' fees; and

(f)    To issue such other relief as the Court may deem just and proper.


WHEREFORE, for the reasons stated herein, Plaintiff should be awarded the relief sought above and such other relief whether legal, equitable or otherwise the Court deems appropriate.

Respectfully submitted,

THE LOWENBAUM PARTNERSHIP, LLC


/s/ Robert W. Stewart
Stanley G. Schroeder, ARN 24953
Robert W. Stewart, ARN 4463
222 South Central Avenue, Suite 901
Clayton, MO 63105
(314) 746-4835 – Direct
(314) 746-4825 – Direct
(314) 863-0092 - Main
(314) 746-4848 - Fax
sschroeder@lowenbaumlaw.com
rstewart@lowenbaumlaw.com

Attorneys for Plaintiffs

# SESSIONS LAMBERT SELWYN LLP

**Attorneys and Counselors**

William Lewis Sessions, Partner
*Board Certified — Civil Trial Law*
*Texas Board of Legal Specialization*

Direct Telephone: (214) 217-8855
Direct Fax: (214) 217-8856
E-mail: lsessions@slslaw.net

1700 Pacific Avenue,
Suite 2260
Dallas, Texas 75201
Tel: (214) 217-8888
Fax: (214) 217-8851

1600 Smith Street,
Suite 4050
Houston, Texas 77002
Tel: (713) 650-3850
Fax: (713) 650-3851

slslaw.net

January 2, 2007

Mr. Joe Gallagher
Fiduciary Asset Management, LLC
8112 Maryland Ave., Suite 400
St. Louis, MO  63105

Re:  Jeff Swope Employment Agreement with Fiduciary Asset Management, LLC

Dear Mr. Gallagher:

Mr. Jeff Swope has engaged me and my firm to represent him in connection with his termination by Fiduciary Asset Management LLC ("FAMCO"). This letter is a formal demand that FAMCO immediately make payment to Jeff Swope for all sums due and owing to Mr. Swope under the terms of his employment agreement with FAMCO, payment of the current market value for the purchase of Mr. Swope's equity in FAMCO, and the immediate return of all of his personal property and effects that were wrongfully retained by FAMCO upon Mr. Swope's wrongful expulsion from FAMCO last summer.

As you must be aware, Mr. Swope was summarily terminated without cause on July 3, 2006 by Charles D. Walbrant after Mr. Swope's four plus years of employment with FAMCO. As of this writing, Mr. Swope is still owed compensation due to him under his employment agreement with FAMCO. Pursuant to the terms of that agreement, Mr. Swope is entitled to the payment of commissions on a quarterly basis as a percentage of revenues from assets raised. Mr. Swope, who brought billions of dollars in new assets to FAMCO during his tenure, is still owed the net present value of those earned commissions of approximately Two Million Dollars ($2,000,000), plus interest from October 15, 2006 on all unpaid amounts.

Additionally, Mr. Swope is the holder of eight percent (8%) equity in FAMCO. As of the June 2005 equity distribution notification delivered to Mr. Swope and five (5) of his colleagues, Mr. Swope's equity was valued at approximately Twelve Million Dollars ($12,000,000.00). Since he was involuntarily forced out of FAMCO, Mr. Swope is entitled to

Appendix 1

JAN-02-2007 TUE 09:18 PM Sessions Lambert Selwyn    FAX NO, 2142178851    P, 03/04

# SESSIONS LAMBERT SELWYN LLP
### Attorneys and Counselors

Mr. Joe Gallagher
January 2, 2007
Page 2 of 3

the payment of the fair market value of that equity as of the date of his separation from FAMCO, plus interest.

In addition, FAMCO perfunctorily forced Mr. Swope from his office and has refused to surrender to him many personal effects, art work, and files that have considerable tangible and intangible value. FAMCO has wrongfully retained possession, and effected a conversion, of Mr. Swope's personal effects, artwork, valued at over $100,000, a television and desk chair from his office. Further, while portions of his files were shipped to him, albeit at an incorrect address, there are a number of items missing that were apparently withheld, including FAMCO's March 2002 offer letter to Mr. Swope, the June 2005 equity distribution letter and several years of tax documents.

This letter also constitutes a formal demand for the immediate return of Mr. Swope's personal effects, including all missing papers from his files. Further, this letter constitutes a formal demand that FAMCO, its officers, directors, equity holders, employees, agents and all others acting in concert with FAMCO or under its direction or control refrain from destroying, altering, or spoiling any and all documents, data, and other tangible items that relate or pertain, directly or indirectly, with Mr. Swope, all information relating or pertaining to his work at FAMCO, all email and other communications relating or pertaining to Mr. Swope and his clients, and all business records and documents relating or pertaining to financial operations of FAMCO and commissions earned by to paid to members, equity holders, employees, agents and other persons employed or compensated by FAMCO, that came into existence since April 1, 2002.

Mr. Swope would prefer to avoid the necessity of filing a lawsuit to collect the amounts due and owing and to secure the return of his personal property. In order to avoid a lawsuit, which will be filed in Austin, Texas, formal demand is made that FAMCO immediately: 1) deliver all personal property belonging to Mr. Swope to this attorney's office, in the same condition as it was left with FAMCO; and, 2) immediately tender payment to Mr. Swope the amount of Fourteen Million Dollars ($14,000,000.00), plus interest at six (6) percent from the dates that each sum stated above became due and payable to Mr. Swope. In the event FAMCO fails to completely comply with this legal demand, we will recommend that Mr. Swope initiate a lawsuit naming FAMCO and all responsible parties as defendants, seeking an accounting of the value of FAMCO and all amounts owed to Mr. Swope, recovery of the principal amounts due and owing, return of his personal property and files, plus the maximum allowable interest, court costs, and reasonable attorney's fees.

Please promptly and courteously comply with this request so that FAMCO may avoid the unpleasant and costly experience of litigation. In the event that you desire to

# SESSIONS LAMBERT SELWYN LLP
### Attorneys and Counselors

Mr. Joe Gallagher
January 2, 2007
Page 3 of 3

communicate with Mr. Swope or this attorney, please do so at the address or phone number
stated above.

Sincerely,

*William L Sessions*

William L. Sessions

WLS:ep

Copy: Mr. Jeff Swope

⚓JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Fiduciary Asset Management, L.L.C. | Jeffrey O. Swope |

| (b) County of Residence of First Listed Plaintiff  St. Louis County | County of Residence of First Listed Defendant  New York City, NY |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Stanley G. Schroeder, The Lowenbaum Partnership, LLC, 222 S Central, Ste 901, Clayton, MO 63105, 314-863-0092 | Williams Sessions, Sessions Lambert Selwyn, 1700 Pacific, Ste 2250, Dallas, TX 75201, 214-217-8888 |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/- |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC section 1332(a), 28 USC section 2201

Brief description of cause:
Declaratory judgment action concerning interpretation of employment relationship

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
14,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  02/12/2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.       (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     Residence (citizenship) of Principal Parties. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.      Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.       Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.      Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity.        Example:        U.S. Civil Statute: 47 USC 553
                                                    Brief Description: Unauthorized reception of cable service

VII.     Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    Related Cases. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

Fiduciary Asset Management, LLC

|                        |   |
|------------------------|---|
| , plaintiff,           | ) |
|                        | ) |
|                        | ) |
| v.                     | )   Case No. |
| Jeffrey O. Swopes      | ) |
|                        | ) |
| , defendant.           | ) |

## ORIGINAL FILING FORM

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY WHEN INITIATING A NEW CASE.**

——THIS CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS

PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER_____

AND ASSIGNED TO THE HONORABLE JUDGE_____.

✓ NEITHER THIS CAUSE, NOR A SUBSTANTIALLY EQUIVALENT COMPLAINT,

PREVIOUSLY HAS BEEN FILED IN THIS COURT, AND THEREFORE MAY BE

OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date: 2/12/07

_____
Signature of Filing Party

## Complaints and Other Initiating Documents
4:07-cv-00301 Fiduciary Asset Management, LLC

### U.S. District Court

### Eastern District of Missouri (LIVE)

Notice of Electronic Filing

The following transaction was received from Stewart, Robert W. entered on 2/12/2007 at 10:10 AM
CST and filed on 2/12/2007

**Case Name:**       Fiduciary Asset Management, LLC
**Case Number:**     4:07-cv-301
**Filer:**           Fiduciary Asset Management, LLC
**Document Number:** 1

**Docket Text:**
COMPLAINT against defendant Jeffrey O Swope with receipt number 1016326, in the amount of $350,
Non-Jury Demand,, filed by Fiduciary Asset Management, LLC. (Attachments: # (1) Appendix 1
Demand Letter)(Stewart, Robert)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1037221849 [Date=2/12/2007] [FileNumber=1837372-0
] [a82cf401a99ab0f30ca15c5f5f9c4a7ad7a727fbd1a978f1f575565470133781442
bffadd7041b7f8f3c17694e1a0528ef700bb165db4b6dd7a5808948f9f756]]
**Document description:** Appendix 1 Demand Letter
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1037221849 [Date=2/12/2007] [FileNumber=1837372-1
] [141a32ac2debd8217f1cb6831d0582418295c419b0cbd66695832aca80664e19c54
d42e011b8d85205eed46851ef997995994333c42cbd73a7d8be4c3faea849]]

**4:07-cv-301 Notice will be electronically mailed to:**

Robert W. Stewart    rstewart@lowenbaumlaw.com

**4:07-cv-301 Notice will be delivered by other means to:**